In the Matter of the ESTATE OF Marie J. BELL, Deceased.

DePAUL HOSPITAL, Appellant (Crossclaim Defendant),

v.

FIRST NATIONAL BANK AND TRUST COMPANY OF WYOMING, a/k/a Norwest Bank Cheyenne, N.A., as Personal Representative and Testamentary Trustee of the Estate of Marie J. Bell, deceased; and Blade Jordan and Teresa Jordan, Appellees (Counterclaim Defendant and Crossclaim Defendants).

No. 87–258.

Supreme Court of Wyoming.

Nov. 22, 1988.

Thomas N. Long of Hirst & Applegate, Cheyenne, for appellant.

Frederick G. Loomis (argued) of Loomis, Lazear, Wilson & Pickett, Cheyenne, for Norwest Bank.

Sherrill A. Veal (argued) of Carmichael, McNiff & Patton, Cheyenne, for the Jordans.

Before CARDINE, C.J., and THOMAS and MACY, JJ., and GUTHRIE and BROWN, JJ., Retired.

CARDINE, Chief Justice.

In this probate case, appellant DePaul Hospital, a residuary legatee of the estate of Marie Bell, appeals from the district court's Second Supplemental Final Decree denying its objection to apportionment of federal estate tax among the residuary legatees. The issues presented for our review are whether litigation of the tax apportionment issue is precluded by res judicata or collateral estoppel and, if not, whether the intra-residual federal estate tax apportionment method proposed by appellee Norwest, personal representative of the estate, was erroneous.

We affirm.

Appellant DePaul Hospital (DePaul) is a residuary legatee of Marie J. Bell's estate. The other residuary legatees are Memorial Hospital (not a party to this appeal) and appellees Blade Jordon and Teresa Jordan. Appellee Norwest is the personal representative and testamentary trustee of the estate. The residuary clause of Marie Bell's fifth codicil directs the distribution of the residuary estate as follows:

"After payment of the devises and bequests and the distribution of the assets provided for in ITEM 4(12)(a), (b) and (c), I direct that all remaining principal of the estate, either after conversion to cash or by distribution in kind as solely determined by the Trustee, shall be distributed in the proportionate parts as follows: "(a) An undivided five-eighths (⅝ths) part unto Teresa Jordan, provided that if she shall not survive me said devise shall lapse.

"(b) An undivided one-eighth (⅛th) part unto Blade Jordan, provided that if he shall not survive me said devise shall lapse.

"(c) An undivided one-eighth (⅛th) part unto DePaul Hospital of Cheyenne, Wyoming.

"(d) An undivided one-eighth (⅛th) part unto Memorial Hospital of Laramie County, Wyoming."

Estate taxes are discussed in Item 2 of Marie Bell's will, which states:

"I direct that my co-executors pay out of my estate my funeral expenses, the expenses of administering my estate, the expenses of my last illness, and all of my just debts, but such payments shall not include any payments for estate and inheritance taxes. *All estate taxes, federal and state, imposed by reason of my death, with respect to any property (whether disposed of by this will or not) required to be included in my gross estate for estate tax purposes, and interest or penalties thereon, shall be borne by my residuary estate.* All legacy, succession, inheritance and like taxes (as distinguished from estate taxes), imposed by reason of my death on any property (whether disposed of by this will or not), and interest or penalties thereon, shall be borne by my residuary estate. So far as practicable and reasonable, my Executors shall pay as soon as convenient after my death any of the taxes referred to in the preceding sentence on future or contingent interests." (emphasis added)

In *Matter of Estate of Bell*, Wyo., 726 P.2d 71 (1986), we concluded that the effect of this tax clause was to impose the burden of estate taxes upon the residuary estate. The substantive question now raised by DePaul is how the tax burden should be divided among the residuary distributees.

DePaul contends that after pre-residual distribution and payment of taxes attributable to the pre-residual dispositions, the residue should be divided among the residuary distributees, each of whom must bear that share of tax which is generated by its own residuary bequest. If the taxes are

apportioned in this manner, which is consistent with the statutory apportionment scheme, DePaul and Memorial would bear no tax attributable to the residuary estate because they are charitable organizations, and the significant burden of the tax would fall on the Jordans. See W.S. 2–10–103 and 2–10–106. In response, appellees argue that after pre-residual distribution, *all* taxes, including those attributable to the residuary estate, should be taken out of the residue and the amount remaining should be distributed to the beneficiaries according to their respective shares as described in the will, without regard to their charitable or non-charitable status. This method would result in a much greater net share for the Jordans.

Before we reach this substantive question, we must address appellees' contention that the issue is res judicata. In *Estate of Bell*, supra, we reviewed a single district court order entered in two cases that had been consolidated for trial. One of the consolidated cases was the probate of Marie Bell's will, and the other was a related declaratory judgment action. In the order, and the letter opinion which it incorporated, the district court concluded that Marie Bell's will directed that all estate taxes would be borne by her residuary estate. The court found that the language of the will in this regard was sufficiently clear to override the apportionment scheme of the Uniform Estate Tax Apportionment Act, W.S. 2–10–101 through 2–10–110. *Estate of Bell, supra; see Matter of Estate of Stratton*, Wyo., 756 P.2d 1342 (1988). We affirmed the district court's ruling. *Estate of Bell*, supra.

After remand, Norwest filed its final report, accounting and petition for distribution of Marie Bell's estate. On January 2, 1987, DePaul filed an objection contending that Norwest's method of intra-residuary tax apportionment was incorrect and that the charitable residuary distributees, including DePaul, should not pay tax attributable to the residuary bequests. DePaul argued that even if the language of the will contained a general direction that estate taxes should be borne by the residuary estate, the issue of "intra-residuary" apportionment among the residuary distributees was not addressed by the will and therefore the provisions of the Uniform Estate Tax Apportionment Act controlled the issue. In response, Norwest contended that the question of tax apportionment had already been decided in the court's earlier final order which was affirmed by this court.

The district court entered a final decree of distribution on March 17, 1987, which expressly disposed of all matters pertaining to the Marie Bell estate except tax apportionment and two other issues not relevant to this appeal. In a "Second Supplemental Final Decree," the court concluded that the tax apportionment issue raised by DePaul's objection had been decided in the earlier order and DePaul was therefore precluded from raising it again. DePaul now appeals from the district court's second supplemental final decree.

■■■ The district court erred in concluding that the issue was precluded. Under general principles of issue preclusion, a party is precluded from relitigating an issue only if it was actually litigated and actually decided in an earlier action. 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction §§ 4419, 4420 (1981). Norwest contends that the issue of intra-residuary apportionment was actually litigated because the trial exhibits included the federal tax return for the estate, which set forth the proposed method of intra-residuary tax apportionment. Even if we agreed that the introduction of the exhibit satisfied the actual litigation requirement, it is clear that in its order following the trial the district court decided only the general issue of whether the estate taxes would be borne by the residuary estate. The court did not determine how the tax burden would be divided among the individual residuary distributees. Because the issue was not actually decided in the prior litigation, DePaul is not precluded from raising it in this appeal.

■■■ Turning to the substantive issue, statutory apportionment is required unless the will provides otherwise. W.S. 2–10–

103; *Matter of Estate of Stratton,* supra. Accordingly, appellees will prevail only if the terms of the will are sufficient to displace the statutory apportionment scheme, particularly the exemption and deduction provision found in W.S. 2–10–106. In *Matter of Estate of Ogburn,* Wyo., 406 P.2d 655, 657–58 (1965), we stated:

"We are one of three states which have adopted the Uniform Estate Tax Apportionment Act, as it relates to Federal estate taxes. With one exception, so far as we can determine, *In re Crozier's Estate,* 105 N.H. 440, 201 A.2d 895, which is not particularly helpful here in view of the variance in the language used in the will, the Uniform Act has not been subjected to judicial scrutiny. Nevertheless, we are not without guidance in the matter. Over one-half of the states have enacted laws of similar import and the aim of the commissioners was to incorporate into the Uniform Act the most desirable features of the several state acts. There are innumerable cases from those states construing directive tax clauses of a will in the light of statutory provisions, and while there is diversity in the result reached because of the variance in the language used, there is much unanimity in the observance of certain general principles for purposes of construction.

"Practically all of the cases agree that a directive against apportionment should be expressed in clear and unambiguous language. Depending, of course, upon the complexity of the testamentary plan a few simple words may suffice to effectuate that purpose. It is essential, however, that the words, or combination of words, used in the will sufficiently indicate an intention against apportionment. In case of doubt the burden of the taxes must be left where the law places it. See A.L.R. Annotations, supra. It has been said that a sufficient tax clause should expressly state '(1) what gifts or beneficiaries are freed of the burden of taxes, (2) what taxes are affected, and (3) where the burden of taxes is shifted.' 28 Am.Jur., Inheritance, Estate, and Gift Taxes, § 488, p. 353. *Surmounting the*

*foregoing rules is the paramount rule that the intention of the testator or testatrix is to be ascertained, if possible, from the meaning of the words used in the context of the entire will.* White v. Wyoming National Bank of Casper, Wyo., 368 P.2d 960, 963, 100 A.L.R.2d 1044; *In re Boyd's Estate,* Wyo., 366 P.2d 336, 337. A representative elaboration of the rule of intention is stated in *Succession of Jones,* La.App., 172 So.2d 312, 316, writ of review refused 247 La. 718, 174 So.2d 131, wherein it was said:

" 'With reference to tax clauses in wills, courts are bound to regard all words in their usual and most known signification, according to their natural and reasonable meaning. * * *

" 'To determine the intention of the testator the whole will is to be taken into consideration. *Every word must be given effect if that can be done without defeating the general purpose of the will which is to be made effective in every reasonable method. * * *'*

"*Once ascertained, the intention must govern, In re Gilchrist's Estate,* 50 Wyo. 153, 58 P.2d 431, 60 P.2d 364; provided, of course, that the result reached is not contrary to law, *In re Armstrong's Estate,* 56 Cal.2d 796, 17 Cal.Rptr. 138, 366 P.2d 490, 493; *National State Bank of Newark v. Stewart,* 135 N.J.Eq. 603, 39 A.2d 435, 437.

"Beyond the foregoing aids to construction, the authorities are not too helpful." (emphasis added and footnotes omitted)

Thus, the paramount consideration is Marie Bell's intent. In determining that intent, we look to the tax clause in light of the entire context of the will. The tax clause provides that estate taxes are to be borne by the residuary estate, but does not specifically address the issue of intra-residuary tax apportionment. Nevertheless, other provisions of the will reflect upon Marie Bell's intent in this regard. Item 7 of the will provides:

"In the event my husband shall not survive me, then *after making the payment of debts, administrative expenses, bequests and taxes provided for in ITEM 2* [the tax clause quoted supra], ITEM

4(12)(a) [specific bequests] and ITEM 6 [a clause authorizing and directing her executors to include in the Item 4 legacies sufficient liquid assets to pay estate and inheritance taxes], hereof, I give, devise and bequeath my entire estate to The First National Bank and Trust Company of Wyoming, in trust under the terms and provisions of trust provided for in ITEM 4 hereof."

This provision directs that all debts, administration expenses, specific bequests and *taxes* are to be paid *prior* to passing the remaining assets to Norwest for distribution. The residuary clause quoted supra, provides that the residuary estate is to be divided in *proportionate parts* of five-eighths to Teresa Jordan, one-eighth to Blade Jordan, one-eighth to DePaul and one-eighth to Memorial Hospital. We conclude that all of these provisions, taken together, evidence a clear intent for after-tax equality of the one-eighth shares to be distributed among the residuary distributees. DePaul's proposed method of intra-residuary apportionment would frustrate this intent. Accordingly, we conclude that Norwest's tax apportionment method was correct.

AFFIRMED.