**In the Matter of the ESTATE OF Elizabeth NEWELL, Deceased.**

**Donald L. NEWELL and Earl R. Cherry, Jr., Personal Representatives of the Estate of Elizabeth Newell, Deceased, Appellants (Petitioners),**

**v.**

**Joanne Read TRUMPER, Donna I. Read Douglas, and James L. Read, Appellees (Protestants).**

**No. 88–51.**

Supreme Court of Wyoming.

Dec. 15, 1988.

Donald E. Jones of Jones and Graham Law Offices, Torrington, for appellants.

Eric M. Alden of Jones, Jones, Vines & Hunkins, Wheatland, for appellees.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and BROWN, J., Retired.*

URBIGKIT, Justice.

This is a second stage probate case appeal taken from a decree of distribution where the apportionment of taxes and expenses is questioned. The trial court, in an Amended Final Report, Accounting and De-

cree of Final Distribution following reversal and remand in *Douglas v. Newell,* 719 P.2d 971 (Wyo.1986) (Newell I), determined that inheritance tax, estate tax, debts, charges, as well as estate operational and administrative expenses should be charged to the estate rather than the specific beneficiaries. We affirm.

Appellants frame the issues as:

1. Does Douglas v. Newell require that the contract balance and interest thereon be treated as a specific bequest which does not abate in any manner for the payment of debts, charges, expenses and federal and state taxes under W.S. § 2-7-808?

2. Does the balance of a contract of sale substituted for a devise of real property by operation of W.S. § 2-6-109(b) remain a specific devise or become a general pecuniary legacy?

3. Is income from the gift to the Read heirs exempt from the provisions of W.S. § 2-7-802, directing income of the estate to be first used for payment of care, management and settlement of the estate?

4. Is the gift to the Read heirs exempt from the provisions of W.S. § 2-10-103, relating to apportionment of federal estate taxes, and former W.S. § 39-6-806(b), relating to state inheritance taxes? [Footnotes omitted.]

## FACTS

As earlier considered in *Newell I,* 719 P.2d 971,[1] the facts of this contested probate will only be re-examined as necessary to illuminate the particularized issues now presented. Originally, controversy arose over the will of Elizabeth Newell (decedent) between two grandsons, primary residual beneficiaries, and two nieces and two nephews, as then stated specific devisees. The object of litigative disagreement was whether the Read ranch interest in Con-

---

* Retired June 30, 1988.

1. Technically, this case has been here twice before—once resulting in the first appeal in *Newell I,* and second in an aborted appeal to this court which was dismissed on October 6, 1987 for

lack of a final order as defined in W.R.A.P. 1.05 and *Matter of Estate of Campbell,* 673 P.2d 645 (Wyo.1983). After final decree of distribution was entered on January 8, 1988, the present appeal was perfected.

verse County, which the decedent received from her brother, was for probate as a specific devise to be considered property of the decedent at the time of her death.[2] The decedent owned the land at the time of drafting the will, but her interest with that of other co-owners had been sold by a contract for deed about two years before her death. Thus, the status of the decedent's annual payments collected under the installment contract of $117,438.73 and the interest attributable to the contract payments is questioned. Also advanced in present appeal is apportionment of taxes and attribution of accrued expenses during the six years of administration.

In first appeal, the parties brought a declaratory judgment seeking the proper construction of the will and to determine whether a will provision would lapse or adeem.[3] After both sides moved for summary judgment, the trial court then granted partial summary judgment to each—in favor of the Read heirs, the nieces and nephew, finding the provision did not lapse, but in favor of the trustees that the devise did adeem. This court reversed by determining that the proviso as an enforceable specific bequest neither lapsed nor adeemed. *Newell I,* 719 P.2d at 972.

## ANALYSIS

In the essence of three of the four issues pursued by appellants is a request for this court to reconsider *Newell I.* Two words accurately sum up this part of the case: res judicata.

"Res judicata is a fact of the Anglo-American system of unified adjudication.

'A court does not face a legal problem as a new, pristine blackboard "never writ upon." Decisions are mirrors of past decisions and in turn are reflected in the decisions of the future. The continuum can no more be broken than can reflecting mirrors be interrupted.' A. Vestal, Res Judicata/Preclusion at V–3 (1969).

"The doctrine of res judicata is that a judgment, decided upon the merits by a court with jurisdiction, is conclusive of that cause of action and facts or issues litigated, both to the parties and their privies in any other action in the same or different court of concurrent jurisdiction on the same issues. 46 Am.Jur.2d Judgments § 394."

*Matter of Swasso,* 751 P.2d 887, 889–90 (Wyo.1988) (quoting from *CLS v. CLJ,* 693 P.2d 774, 775–76 (Wyo.1985)).[4] The criteria used to determine res judicata's applicability to a situation are: "(1) the parties were identical; (2) the subject matter was identical; (3) the issues were the same and related to the subject matter; and (4) the capacities of the persons were identical in reference to both the subject matter and the issues between them." *Matter of Swasso,* 751 P.2d at 890. All four criteria unquestionably are met as to whether the contract payment in the instant case should be treated as a specific bequest which, as determined in first appeal, will not now be reconsidered.

Appellants also challenge the issue of the proper characterization of the accruing purchase contract interest as included in the periodic payments. They contend that the interest is income of the estate, while the Read heirs claimed the interest as part of their specific bequest. Wyoming has adopted the view set out in 6 Bowe–Parker: Page on Wills, § 59.15 (1962) that "[i]n the absence of a provision to the contrary in a will, a specific bequest also carries accretions accrued after the

---

2. The nieces and nephew were also given some town lots and the royalty and mineral interest income from the ranch. One nephew, Malcolm R. Johnson, did not contest distribution. However, the proper distribution of these properties was never an appellate issue.

3. Article X of the decedent's will devised the property to two nephews and two nieces in equal shares as providing:

[A]ll of my interest and title in the real estate located in Converse County, Wyoming, which I inherited from my deceased brother, Frederic S. Read * * *.

4. For other cases dealing with res judicata or issue preclusion, see: *Matter of Estate of Bell,* 764 P.2d 689 (Wyo.1988) and *Texas West Oil and Gas Corp. v. First Interstate Bank of Casper,* 743 P.2d 857 (1987), aff'd on reh'g 749 P.2d 278 (Wyo.1988).

testator's death." *Matter of Deutsch's Estate*, 644 P.2d 768, 770 (Wyo.1982). Where, as here, there is no contrary provision in the will, the interest after death as attributable to the contract payments is part of the specific bequest for estate distribution. Although W.S. 2–3–601, et seq. as the principal and income apportionment code may primarily address trust administration, W.S. 2–3–605(b)(i) [5] is applicable since the legacy in this case does include both principal and interest as asset income. See *Matter of Deutsch's Estate*, 644 P.2d at 771 (this court found royalty payments from copyrights to be a kind of property involving principal and income so that W.S. 2–3–611 and 2–3–605(b)(ii) were relevant). The record discloses that no expenses were attributable to the contract payments, and that the amount of income taxes allocable to the Read heirs was properly set off against the bequest. The trial court was correct in attribution decision for distribution.

■ As to the first specifically stated issue involving abatement, we do not perceive relevance since the record fails to disclose that abatement is necessary with the ample resources in the residual estate to pay the taxes and expenses. Otherwise, this specific bequest in its entirety would properly fall within W.S. 2–7–808(a)(iv) [6] and take its place within the abatement order after the property given to the residual beneficiaries.

■ The second appellate issue concerned transformation of the bequest into a general pecuniary legacy. Appellants' reliance on the definition of general bequest enunciated in *Matter of Deutsch's Estate*, 644 P.2d 768 and W.S. 2–6–109(b) is misplaced. This court in *Matter of Deutsch's Estate*, 644 P.2d at 769, 770 looked to Justice Blume's articulation of specific and general bequests in *State v. Underwood*, 54 Wyo. 1, 86 P.2d 707 (1939) to provide guidance.

[A] specific legacy is a bequest of a specific article of the testator's estate, distinguished from all others of the same kind, as, for example, a particular horse, or piece of plate, or money in a certain purse or chest, etc. Pomeroy, supra, [Equity, 4th ed.] Sec. 1130. A general legacy is a gift of a certain amount of money without pointing out any source from which the amount is to be paid, * * *.

5. W.S. 2–3–605, in pertinent part, provides:

(b) Unless the will otherwise provides, income from the assets of a decedent's estate after the death of the testator and before distribution, including income from property used to discharge liabilities, shall be determined in accordance with the rules applicable to a trustee under this act and distributed as follows:

(i) To specific legatees and devisees, the income from the property bequeathed or devised to them respectively, less taxes, ordinary repairs, and other expenses of ·management and operation of the property, and an appropriate portion of interest accrued since the death of the testator and of taxes imposed on income (excluding taxes on capital gains) which accrue during the period of administration.

6. The order of abatement is addressed in W.S. 2–7–808, which provides:

(a) Except as provided in the will, shares of the distributees shall abate for the payment of *debts and charges, federal and state taxes,* * * * in the following order:

(i) Property not disposed of by the will;

(ii) Property devised to the residuary devisee, except property devised to a surviving spouse who takes under the will;

(iii) Property disposed of by the will but not specifically devised and not devised to the residuary devisee, except property devised to the surviving spouse who takes under the will;

(iv) *Property specifically devised,* except property devised to a surviving spouse who takes under the will;

(v) Property devised to a surviving spouse who takes under the will.

(b) If the provisions of the will, the testamentary plan or the express or implied purpose of the devise would be defeated by the order of abatement stated in subsection (a), the shares of distributees shall abate in the manner necessary to give effect to the intention of the testator. [Emphasis added.]

While we perceive that appellants may be contending that by applying the effect and intent of W.S. 2–7–808(b), the statutory order of abatement is not appropriate. That intent was previously resolved in our prior decision that decedent intended this legacy to be a specific devise (bequest) for the Read heirs. *Newell I,* 719 P.2d at 973, 981–82. Thus, the statutory order of abatement is proper, if necessary.

*Id.* at 715. Clearly, the source of the funds was the Read ranch installment contract. Thus, from a purely definitional perspective, appellants have not shown us persuasive authority to reverse the trial court. Additionally, appellants rely on W.S. 2–6–109(b) to bolster their position. However, that statutory subpart does not support their stance, as it provides:

(b) A specific devisee has the right to the remaining specifically devised property and:

(i) Any balance of the purchase price together with any security interest owing from a purchaser to the testator at death by reason of sale of the property;

\* \* \*.

The unitary interest as the proceeds from a defined real estate installment contract constituted a specific devise under the will. Recitation of this statute does not convert that specific asset into a general legacy by legislative metamorphosis.[7]

■ As to the third issue on the use of payments constituting the Read inheritance, appellants consider that W.S. 2–7–802 authorizes payment of the expenses of care, management, and settlement of the estate to come out of this fund. However, W.S. 2–7–802(b) provides:

7. While we note that the phrase "general pecuniary devise" is utilized in W.S. 2–6–109(a), that subpart deals with property sold by a conservator, condemned, or destroyed by some casualty, and is not applicable to this situation.

8. W.S. 39–6–806 (1977 Replacement) is applicable to this case because in *Newell I,* 719 P.2d at 978, this court held that the law in effect at the time of the decedent's death was controlling. This statute was in effect on May 16, 1982, the date of the decedent's death, although repealed by 1982 Wyo.Sess. Laws ch. 74, § 3, effective January 1, 1983. Consequently, Wyoming does not now have a statute controlling the apportionment of state inheritance taxes. *Matter of Estate of Stratton,* 756 P.2d 1342 (Wyo.1988).

9. "Tax" is defined for W.S. 2–10–103, which is part of the Uniform Estate Tax Apportionment Act in W.S. 2–10–102(a)(vi) to mean "federal estate tax and interest and penalties imposed in addition to the tax." Thus, only the apportionment of federal estate taxes is statutorily mandated.

10. W.S. 39–6–806(b) (1977 Replacement), until 1983 repeal, provided:

(b) Except as otherwise directed by the decedent's will, the expenses shall be paid first out of *income of the estate* received by the personal representative, then from the residue of the estate. [Emphasis added.]

The fallacy in appellants' claim is the characterization of these contract payments as "estate income." Those annually received amounts, including interest belonged to the defined legacy and were not estate receipts constituting income.

As the last appellate issue, appellants contest the apportionment of federal estate and state inheritance taxes. Appellants specifically rely on W.S. 39–6–806(b) (1977 Replacement)[8] relating to the apportionment of inheritance taxes and W.S. 2–10–103[9] relating to the apportionment of estate taxes. However, W.S. 39–6–806(b) (1977 Replacement)[10] and 2–10–103[11] do not prevent the decedent from exercising her right to shift the statutory burden to a particular fund. *Matter of Estate of Ogburn,* 406 P.2d 655 (Wyo.1965); Note, *Federal Estate Tax and State Inheritance Tax—Sufficiency of a Testamentary Tax Directive to Defeat the Operation of the Uniform Estate Tax Apportionment Act—In re Ogburn's Estate, 406 P.2d 655 (Wyo.1965),* I Land & Water L.Rev. 526

(b) Any person to whom property is transferred by any inheritance, devise, bequest, legacy or gift and the administrators or executors of the estate are personally liable for Wyoming inheritance tax and interest due thereon to the extent of the value of the property. Taxes and interest due from the estates of resident decedents shall be sued for within five (5) years after the taxes and interest are due and collectible or else the taxes and interest are conclusively presumed to be paid and cease to be a lien against the property of the estate.

11. W.S. 2–10–103 provides:

*Unless the will otherwise provides,* the tax shall be apportioned among all persons interested in the estate. The apportionment shall be made in proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax shall be used for that purpose. [Emphasis added.]

(1966). See also *Matter of Estate of Bell,* 764 P.2d 689 (Wyo.1988) and *Matter of Estate of Stratton,* 756 P.2d 1342 (Wyo. 1988). The burden of establishing the nonapportionment intent is upon the party contending against the statute. *In re Hilliar's Estate,* 498 P.2d 1237 (Wyo.1972); *Matter of Estate of Ogburn,* 406 P.2d at 658.

 This court has analyzed the sufficiency of a will provision to show the required contrary intent in *Matter of Estate of Ogburn,* 406 P.2d 655. The tri-part test for sufficiency of the language as a stated intention against apportionment is delineation of: " '(1) what gifts or beneficiaries are freed of the burden of taxes, (2) what taxes are affected, and (3) where the burden of taxes is shifted.' " *Id.* at 658 (quoting from 28 Am.Jur., Inheritance, Estate, and Gift Taxes, § 488 at 353). Those provisions were addressed in *Ogburn* in language of: "I direct the payment of all my just debts, taxes, funeral expenses and expense of administration of my estate." *Matter of Estate of Ogburn,* 406 P.2d at 657. This court in *Ogburn,* found the terminology to be sufficient to require payment of federal estate taxes without apportionment, but insufficient for state inheritance taxes not to be apportioned. *Matter of Estate of Ogburn,* 406 P.2d at 660. This nuance is not relevant because in the instant case, the Newell provision stated: *"All inheritance and estate taxes* owing by reason of my death shall be paid from my probate estate, without apportionment, notwithstanding any state or federal law to the contrary, * * *."* (Emphasis added.) This provision clearly and sufficiently expresses an intent that both "inheritance and estate taxes" were not to be apportioned so that the decedent's *contrary intent* under W.S. 39–6–806(b) (1977 Replacement) and 2–10–103 was properly established to sustain the trial court.

To conclude, the devise to the Read heirs remains a specific devise and does not create "income of the estate" from the contract payments themselves and attributable interest with which estate administrative and operational expenses could properly be paid. The will foreclosed apportionment of estate and inheritance taxes. The trial court's decision properly applied the facts of the case to the law and is affirmed.