In the Matter of the PATERNITY OF JRW and KB, Minors.

DLB, Appellant (Petitioner),

v.

DJB and the State of Wyoming, Appellees (Respondents).

No. C–90–3.

Supreme Court of Wyoming.

July 2, 1991.

C.M. Aron and Patricia L. Simpson of Aron and Henning, Laramie, for appellant.

Linda S. Lewis of Blythe & Lewis, Cheyenne, for appellees.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY, and GOLDEN, JJ.

URBIGKIT, Chief Justice.

In this case, the court must decide whether DLB, the appellant and presumed father of two minor children (hereinafter appellant), can raise the question of paternity more than two years after his divorce

from DJB, appellee and the children's natural mother (hereinafter mother). Under the doctrines of res judicata, collateral estoppel, judicial estoppel, and because appellant failed to bring his paternity action within a "reasonable time," we affirm the order of the district court granting the mother's motion to dismiss appellant's petition to determine nonexistence of the father-child relationship pursuant to Wyoming's version of the Uniform Parentage Act, W.S. 14–2–101 through 14–2–120.

Appellant raises the following issues on appeal:

1. Is a child support order in a divorce decree *res judicata* on the question of paternity so as to bar a statutory proceeding under the Wyoming Parentage Act?

2. Is a Parentage Act petition subject to dismissal because the petitioner has been ordered to pay child support?

In contrast, the mother identifies the issues as:

I. Does a divorce decree that specifically finds that two children were born as issue of a marriage operate to bar a proceeding under the Wyoming Parentage Act?

II. Does the doctrine of judicial estoppel bar appellant's paternity action?

III. Is the Wyoming Parentage Act applicable when paternity has been previously established?

IV. Was the appellant's petition to determine the non-existence of paternity timely filed under W.S. 14–2–104?

## FACTS

The mother gave birth to JRW (the son) on November 13, 1984. Appellant and the mother were married thereafter on April 23, 1985 and then separated on February 11, 1986. Following the separation, the mother gave birth to KB (the daughter) on November 27, 1986 which was followed by a divorce on May 14, 1987.

Appellant acknowledged paternity of the son in an affidavit filed with the state office for Vital Records Services shortly after his marriage to the mother. Appellant was named as the father on the child's birth certificate. Appellant admitted in his answer and counterclaim to the mother's complaint for divorce that the son was born "as issue" of the marriage. In the same document, appellant contested paternity of the daughter by stating that "[the mother] is on her proof that [appellant] is the father of [the daughter] since the possibility is remote." Subsequently, however, appellant and the mother stated in their property settlement agreement that both children were issue of the marriage. In addition, the decree of divorce specifically found that the son and daughter were offspring born as issue of the marriage. Appellant was ordered to pay monthly child support in the amount of $100 per child or twenty-five percent of his income up to $600 per month, whichever was greater. Appellant was represented by counsel throughout the divorce proceeding and no appeal was taken.

Shortly after the divorce, appellant became delinquent in making his monthly court-ordered child support payments. The State of Wyoming, as assignee of the mother's right to collect child support payments under Aid to Families with Dependent Children provisions,[1] brought an enforcement

---

**1.** Assignment of the right to collect child support payments is governed by 42 U.S.C.S. § 602(a)(26) (1985 & 1990 Cum.Supp.) and W.S. 20–6–106(a). *See also* 42 U.S.C.S. § 654 (1985 & 1990 Cum.Supp.).

The record, in tragic form, shows the initiative cause for contested parentage was DPASS collection activity to secure support. The stipulation of parentage was filed and the decree entered on May 14, 1987 and by November, DPASS collection activities were underway. This proceeding followed two years later in September, 1989. Within this proceeding, appellant

restates the moral boundaries of his relationship to the two children:

1. The Court Commissioner[ ] [found] that the underlying basis for the Petition is a desire to avoid payment of Court-ordered support. Although this finding is substantially true, it is incomplete. In fact, there is no evidence in the record—other than the argument of counsel—upon which to make such a finding. The complete argument of Petitioner, and the evidence which Petitioner would expect to offer at an evidentiary hearing in this matter, is that [appellant] wants to determine whether he is the father of these chil-

action against appellant. In an order reducing the arrearage to judgment and modifying the divorce decree, the state was granted judgment for past due support in the amount of $4,939.60 and appellant was also ordered to provide health insurance for the two children. Subsequently, appellant brought a Petition to Determine Nonexistence of the Father and Child Relationship pursuant to W.S. 14–2–104(a)(ii). Alleging that the son and daughter were not his natural children, appellant requested appointment of a guardian ad litem for the children, an informal hearing and an order to conduct genetic testing to determine parentage. The requests were denied, the district court granted the mother's motion to dismiss, and this appeal followed.

## ANALYSIS

 In *Mostert v. CBL & Associates,* 741 P.2d 1090, 1092 (Wyo.1987), we summarized our standard of review when a trial court grants a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to W.R.C.P. 12(b)(6):

> According to our standard of review we will sustain a dismissal of a complaint only if it shows on its face that the plaintiff was not entitled to relief under any set of facts. *Johnson v. Aetna Casualty & Surety Co. of Hartford,* Wyo., 608 P.2d 1299 (1980). In considering such a motion, the "facts alleged in the complaint are admitted and the allegations must be viewed in the light most favorable to plaintiffs." *Moxley v. Laramie Builders, Inc.,* Wyo., 600 P.2d 733, 734 (1979). Dismissal is a drastic remedy, and is sparingly granted. *Harris v. Grizzle,* Wyo., 599 P.2d 580 (1979).

 In *Texas West Oil and Gas Corp. v. First Interstate Bank of Casper,* 743 P.2d 857 (1987), *reconfirmed,* 749 P.2d 278 (Wyo.1988), we answered the narrower question of whether res judicata or collateral estoppel defenses can be sustained on a motion to dismiss. We concluded:

This court follows the modern trend * * *, that if the information necessary for decision is available to the court by judicial notice, defendant can raise res judicata or collateral estoppel for consideration by a motion to dismiss.

*Id.* at 858.

These principles control the disposition of this case. Despite the fact that motions to dismiss are generally not favored, we hold that the district court properly decided that appellant's petition to disestablish paternity was barred since it was not brought within the statutory "reasonable time." W.S. 14–2–104(a)(ii). In addition, we hold that the petition is barred by the doctrines of res judicata, collateral estoppel and judicial estoppel.

In 1977, Wyoming adopted a slightly modified version of the Uniform Parentage Act, W.S. 14–2–101 through 14–2–120. See generally, Uniform Parentage Act, 9B U.L.A. 287, 287–345 (1987 & 1991 Cum. Supp.). The Act was promulgated by the National Conference of Commissioners on Uniform State Laws in response to several United States Supreme Court decisions premised on the discriminatory treatment of illegitimate children and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *See Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) (holding that an illegitimate child is guaranteed a right of support from his father); *Weber v. Aetna Cas. & Sur. Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972) (holding that penalizing the illegitimate child for the acts of the parent is an unconstitutional and ineffective deterrent and does not serve any state interest); and *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, *reh'g denied* 393 U.S. 898, 89 S.Ct. 65, 21 L.Ed.2d 185 (1968) (holding unconstitutional a state wrongful death statute which denied illegitimate children the right to recover for the wrongful death of their mother). The Act is primarily designed to accord all children, whether legitimate or illegitimate, Fourteenth Amendment substan-

dren so that he can properly support them and establish a paternal relationship with

them if he is the father, and he can avoid the unjust burden of supporting them if he is not.

tive legal equality. The Act is a legislative attempt to erase the stigma associated with out-of-wedlock birth. *See* Comment, *Washington's Parentage Act: A Step Forward for Children's Rights*, 12 Gonzaga L.Rev. 455 (1977) and Note, *The Uniform Parentage Act: What It Will Mean for the Putative Father in California*, 28 Hastings L.J. 191 (1976).

■ Appellant is the "presumed father" of both children under the statutory requirements in Wyoming's version of the Uniform Parentage Act. With regard to the son born approximately four and one-half months prior to appellant and the mother's marriage, W.S. 14–2–102 states in pertinent part:

(a) A man is presumed to be the natural father of a child if:

 \* \* \* \* \* \*

(iii) After the child's birth, he and the child's natural mother married \* \* \*; and:

(A) He has acknowledged his paternity of the child in writing filed with the state office of vital records services; or

(B) With his consent, he is named as the child's father on the child's birth certificate; or

(C) He is obligated to support the child under a written voluntary promise or by court order \* \* \*.

The record indicates that appellant is the presumed father of the son by virtue of having married the mother and acknowledging his paternity in an affidavit filed with the state office for Vital Records Services. Appellant consented to being named as the father on the son's birth certificate. Also, appellant made a written voluntary promise to pay child support in a property settlement agreement and was ordered to do the same in the divorce decree. Thus, appellant satisfies all of the statutory alternatives for "presumed father" status of the son under the Act.

■ Similarly, appellant is the "presumed father" of the daughter pursuant to W.S. 14–2–102, which states in pertinent part:

(a) A man is presumed to be the natural father of a child if:

(i) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred (300) days after the marriage is terminated by death, annulment or divorce or after a decree of separation is entered by a court \* \* \*.

The daughter was born approximately six months before the parties divorced. Though the record, minimal as it is, suggests the parties had separated slightly more than nine months prior to the daughter's birth, no proceeding except for the subsequent divorce complaint is found. In Wyoming, a child born to a married woman or conceived during wedlock is presumed to be the child of the mother's husband. Thus, appellant also meets the statutory definition of "presumed father" of the daughter.

■ Legitimacy is one of the strongest presumptions known in the law. However, under the Uniform Parentage Act as adopted in Wyoming, the presumption is not absolute or conclusive. Under the Parentage Act, a "presumed father" has certain specific statutory rights to contest paternity. W.S. 14–2–104 states in part:

(a) a man presumed to be [a child's] father under W.S. 14–2–102(a)(i), (ii) or (iii) may bring action:

 \* \* \* \* \* \*

(ii) For the purpose of declaring the nonexistence of the father and child relationship presumed under W.S. 14–2–102(a)(i), (ii) or (iii) only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five (5) years after the child's birth.

In this case, while appellant brought his petition to determine the nonexistence of the father-child relationship within five years of the birth of both children, he waited more than two years after the divorce before doing so. The district court, in adopting the findings and recommendations of the court commissioner, found that appellant failed to bring his action within a

"reasonable time" and thus refused appellant's request for appointment of a guardian ad litem for the children, an informal hearing, and genetic testing.[2]

Appellant argued before the district court and reiterates on appeal that the mandatory language in W.S. 14–2–107 through 14–2–109 of the Parentage Act compels the district court to grant a presumed father's request for genetic testing to establish the nonexistence of paternity. This argument comes more than two years after the parties agreed that both children were born "of [the] marriage" and after appellant did not appeal the divorce decree stating that the son and daughter were "born as issue" of the marriage. Appellant cites *Vigil v. Tafoya*, 600 P.2d 721 (Wyo.1979) for the proposition that the Parentage Act is the exclusive means of determining parentage. Appellant reads the Parentage Act to invalidate any other paternity determination not made in strict compliance with the Act (i.e., any finding of paternity without the benefit of genetic testing is void).

Appellant's argument fails, however, since it ignores the clear policy implications underlying the Act. While genetic testing, appointment of a guardian ad litem and an informal hearing are mandatory in the case of an initial, contested paternity determination, the Act does not mandate that the same procedures be used when paternity has already been established with the consent of the parties in a prior adjudication. We read nothing in the Parentage Act which requires full procedural compliance with the Act before the question of paternity is resolved. Where, as here, appellant and the mother agreed that the children were born of the marriage and this agreement was reflected in the divorce decree, there has been no violation of the mandatory language in the Act. The Act, as applied to the circumstances in this case, made appellant the "presumed father" and, as such, a blood test was not mandatory to establish parentage at the time of divorce. Under W.S. 14–2–106(a)[3] in effect at the time of the divorce, appellant failed to exercise the statutory option of challenging his "presumed father" status in a parentage action joined with the divorce proceeding.

Appellant finds support in this court's decision in *Matter of TLB*, 771 P.2d 811 (Wyo.1989). However, appellant's reliance is misplaced since *Matter of TLB* is distinguishable from the present case in several ways. First, rather than attempting to verify the nonexistence of paternity, *Matter of TLB* involved a putative father trying to establish paternity. Second, the putative father and natural mother in *Matter of TLB* never married. Third, *Matter of TLB* involved a negotiated agreement in which the father stipulated that he was the natural father of the child, would pay child support, and, at the same time, agreed to relinquish all parental rights to the child. Finally, and most significantly, *Matter of TLB* did not involve a "presumed father" under the Act. *Matter of TLB* dealt with an initial determination of paternity in which the statutory requirements were not followed; in this case, we are reviewing a final determination of paternity made more than two years earlier by agreement of the parties and under the auspices of the district court. Thus, this court's finding in

---

**2.** Appellant based his request on three statutory provisions in the Wyoming act. W.S. 14–2–107 states in part:

> The child shall be made a party to the action. If he is a minor he shall be represented by his guardian or a guardian ad litem appointed by the court.

W.S. 14–2–108(a) states in part:

> As soon as practicable after an action is brought to declare the existence or nonexistence of the father and child relationship, an informal hearing shall be held.

W.S. 14–2–109(b) states in part:

> The court may, and upon request by a party shall, require the child, mother or alleged father to submit to genetic tests.

**3.** W.S. 14–2–106(a) states:

> The district court has jurisdiction of an action brought under W.S. 14–2–101 through 14–2–120. The action may be joined with an action for divorce, annulment, separate maintenance, support or any action affecting the parent and child relationship.

Unlike Wyoming, other states compel joinder of parentage actions with divorce proceedings. *See B.P. v. G.P.*, 222 N.J.Super. 101, 536 A.2d 271 (1987).

*Matter of TLB* that the district court's refusal to appoint a guardian ad litem or conduct an informal hearing rendered the paternity decree void has no bearing on the present case. *Matter of TLB*, 771 P.2d at 812–13.

While genetic testing may presumptively be necessary in a paternity action, the presumption can be effectively rebutted by the agreement of the parties. *Matter of SAJ*, 781 P.2d 528 (Wyo.1989). The Act, seeking to "legitimize" children born outside the traditional family unit, presumes paternity under those certain circumstances which are present in this case and the obligation remains with the presumed father to bring a timely action under W.S. 14–2–104(a)(ii) to rebut the presumption.

Consequently, we must interpret the language in W.S. 14–2–104(a)(ii) as it relates to statutory limitations on bringing a paternity action under the Act. The statute dictates that an action must be brought "within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five (5) years after the child's birth." W.S. 14–2–104(a)(ii).[4] Appellant argues that five years is the controlling feature in the statute and any action brought within five years of birth is automatically viable. Accepting appellant's argument as correct would eviscerate the fundamental purpose of the Act; that is, to ensure every child's right to equal protection under the law by "legitimizing" a child at the earliest possible time. Appellant's argument would, in effect, allow every presumed father in the state a five year "window" in which to challenge paternity, wreak havoc on domestic tranquility, and attempt to escape parental support obligations. This result was surely not intended by the legislature when it adopted Wyoming's version of the Uniform Parentage Act in 1977.

In *Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91, *reh'g denied* 492 U.S. 937, 110 S.Ct. 22, 106 L.Ed.2d 634 (1989), the United States Supreme Court considered the presumption of legitimacy under California's version of the Uniform Parentage Act. The United States Supreme Court stated that in California it is *"irrelevant* for paternity purposes whether a child conceived during, and born into, an existing marriage was begotten by someone other than the husband [of the mother]." *Id.* at 119, 109 S.Ct. at —— (emphasis in original). The United States Supreme Court found that the presumption of legitimacy is actually a substantive rule of law based on overriding social policy derived from the relationship of the presumed father and the child at the time of birth. *Id.* Applying the reasoning in *Michael H.* to this case, if we grant appellant the right to compel genetic testing, we effectively deny the children's protected interests in having their legitimacy presumed under the Act. The balance between the children's protected right not to be "bastardiz[ed]" outweighs the father's interest in ascertaining paternity more than two years after acknowledging the same. *See A v. X, Y & Z*, 641 P.2d 1222, 1227 (Wyo.), *cert. denied* 459 U.S. 1021, 103 S.Ct. 388, 74 L.Ed.2d 518 (1982).

Also, to accept appellant's argument that five years is the controlling limitation in this case would violate our well established rules of statutory interpretation. In *Deloges v. State ex rel. Wyoming Worker's Compensation Div.*, 750 P.2d 1329, 1331 (Wyo.1988), we stated:

> Our general rules of statutory construction are well settled. If the language of a statute is clear and unambiguous, we must abide by the plain meaning of the statute, * * * but where a statute is ambiguous, the court will resort to general principles of statutory construction in an attempt to ascertain legislative intent. * * * Furthermore, it is a fundamental rule of statutory interpretation that all portions of an act must be read in pari materia, and every word,

---

**4.** Washington and California eliminated the five year statutory limit on bringing an action to establish nonexistence of paternity; their statutes simply require that an action be brought "within a reasonable time" after obtaining knowledge of relevant facts. *See Miller v. Sybouts*, 97 Wash.2d 445, 645 P.2d 1082, 1084 (1982); Wash.Rev.Code Ann. § 26.26.060(1)(b) (1986); Cal.Civ.Code, § 7006(a)(2) (West 1991 Supp.).

clause, and sentence must be construed so that no part is inoperative or superfluous. * * * Additionally, we have held that this Court must assume that the legislature did not intend futile things, * * *, and that statutes should not be interpreted in a manner producing absurd results.

We have held that the Parentage Act must be "strictly construed and carefully adhered to" in order to give effect to the legislative intent. *Matter of TRG*, 665 P.2d 491, 497 (Wyo.1983). In reading W.S. 14–2–104(a)(ii) as a whole, we find that the legislature obviously intended that, for the sake of the child, an action to establish nonexistence of paternity must be brought promptly upon discovery of circumstances indicative of nonpaternity. "[W]ithin a reasonable time" is the operative hurdle which a nonexistence of paternity action must pass. Any dilatory action will not be saved by the five year ceiling.

Determination of what constitutes "reasonable time" is a question of fact for the trial court. This court recently stated the principle by the following quotation in *Matney v. Webster*, 808 P.2d 212, 214 (Wyo. 1991):

What constitutes a reasonable time in any particular case is a question of fact. *Mott Equity Elevator v. Svihovec*, 236 N.W.2d 900, 907 (N.D.1975).

In the application of this rule and the further principle regarding appellate review, the court, in *Miller v. Sybouts*, 97 Wash.2d 445, 645 P.2d 1082, 1085 (1982), said that "[n]ormally we will not substitute our judgment for that of the trial court when there is support for its decision." We will follow those principles for this decision to concur with the decision of the trial court. *Klawitter v. Crawford*, 185 Ill.App.3d 778, 133 Ill.Dec. 721, 727, 541 N.E.2d 1159, 1165 (1989).

■ Next, appellant argues that the district court, by adopting the findings of the commissioner, decided the case based on grounds other than the stated ground of

res judicata as presented in the mother's motion to dismiss. Appellant contends this violates the court's standard of viewing the allegations of the petition in a light most favorable to the party opposing the motion to dismiss.

We disagree. The mother's motion to dismiss filed in opposition to appellant's petition to establish the nonexistence of the father-child relationship stated the following as the underlying basis for dismissal:

2. Respondents allege that this matter is Res Judicata *and* that Petitioner is barred from action to determine the nonexistence of paternity at this time.

(Emphasis added.) We read the basis of the mother's motion to dismiss to constitute two separate grounds—res judicata being the first and a statute of limitations bar being the second. The district court essentially granted the motion to dismiss based on the second ground when it adopted the commissioner's conclusion that "[w]hile there may not be sufficient evidence before the Court to determine estoppel or res judicata, there is sufficient evidence that the action was not brought within a reasonable period of time after knowledge of the relevant facts."

Rule 301, Uniform Rules for the District Courts of the State of Wyoming states in part:

Each motion filed, except motions for summary judgment, shall set out the specific point or points upon which the motion is brought[.]

Thus, the mother was obligated to specify the grounds on which she based her motion to dismiss and the district court was required to grant the motion based on one or more of the stated grounds. The mother clearly failed to specify reliance on W.S. 14–2–104(a)(ii) [5] of the Parentage Act in her motion to dismiss; yet, it is equally clear that counsel for both sides argued that applicability of the statute before the commissioner. In addition, counsel for appellant addressed the timeliness issue in his statement of objection to the commission-

---

5. The relevant portion of W.S. § 14–2–104(a)(ii) requires an action to determine nonexistence of the father-child relationship be brought "within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five (5) years after the child's birth."

er's report. We find, therefore, that if there was error in the district court's granting of the mother's motion to dismiss based on reasons not specifically set forth in the written motion, the error was harmless. W.R.A.P. 7.04.

Differing somewhat from the conclusion of the commissioner as adopted by the district court, we also find that sustaining the motion to dismiss was justified by res judicata, which doctrine is well established in the Wyoming judicial system. The doctrine of res judicata

> arises through public policy and necessity, it being in the interest of the state that there should be an end to litigation. Also, the doctrine arises from the need to prevent hardship on the individual and to prevent his being vexed twice for the same cause.

*Rubeling v. Rubeling,* 406 P.2d 283, 284 (Wyo.1965).

In *Delgue v. Curutchet,* 677 P.2d 208, 213–14 (Wyo.1984), we discussed the policies behind the doctrine of res judicata and the related doctrine of collateral estoppel:

> As recognized in this state, these doctrines incorporate a universal precept of common-law jurisprudence to the effect that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction * * * cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), quoting from *Southern Pacific R. Co. v. United States,* 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). These doctrines are founded upon the interest held by society in having differences conclusively resolved in a single action thereby avoiding the vexation and expense which are associated with piecemeal litigation. The necessity for sustaining this social interest is the justification for the doctrines of res judicata and collateral estoppel. *Montana v. United States, supra,* 440 U.S. at 153–154, 99 S.Ct. at 973–74; *Barrett v. Town of Guernsey, supra,* 652 P.2d [395] at 398–399 [ (Wyo.1982) ]; and *Rubeling v. Ru-*

*beling, supra,* 406 P.2d at 284. These doctrines, which inhibit the relitigation of claims or issues upon which there has been a full and fair opportunity to litigate in a court of competent jurisdiction, promote the reliance by citizens of the state upon courts to settle their disputes and they conserve judicial resources.

The interest served by both doctrines is essentially the same, but courts, including this court, have been careful to distinguish between the two. Res judicata can be described generally as that rule which precludes the presentation by parties or those in privity with them of the same claim that was resolved by an earlier judgment. *Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1877); *Bard Ranch Company v. Weber, supra,* 557 P.2d [722] at 727 [ (Wyo.1976) ]; *Willis v. Willis, supra,* [48 Wyo. 403] 49 P.2d [670] at 673; [ (1935) ]; and Restatement (Second) of Judgments, § 17 (1982). The effect of collateral estoppel is that of preventing relitigation of issues which were involved actually and necessarily in the prior action between the same parties. *Roush v. Roush, supra,* 589 P.2d [841] at 843 [ (Wyo.1979) ]; *Bard Ranch Company v. Weber, supra,* 557 P.2d at 726–727; *Willis v. Willis, supra,* 49 P.2d at 673–677; and Restatement (Second) of Judgments, § 27 (1982).

Additional justification for the doctrines of res judicata and collateral estoppel includes: prevention of inconsistent decisions (*Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980)); the concept that each party shall be limited to one opportunity to try his case on the merits (*see CLS v. CLJ,* 693 P.2d 774, 776 (Wyo. 1985)); and preventing the legal system from becoming unmanageable, (*Manners v. Manners,* 706 P.2d 671, 674–75 (Wyo. 1985)). As the United States Supreme Court has said, " '[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts * * *.' " *Federated Dept. Stores,*

*Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981) (quoting *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506, 508, 61 L.Ed. 1148 (1917)).

A divorce decree is a final judgment and res judicata on all issues decided. *Warren v. Hart,* 747 P.2d 511, 512 (Wyo.1987); *Manners,* 706 P.2d at 674; *Mentock v. Mentock,* 638 P.2d 156, 158 (Wyo.1981); *Heyl v. Heyl,* 518 P.2d 28, 30 (Wyo.1974). In the divorce context, we recognized the importance of finality when we said "[e]specially is this true in divorce cases when the emotional involvement of the parties tends to magnify the importance of all matters in connection therewith." *Heyl,* 518 P.2d at 30.

Because of the potentially damaging effect that relitigation of a paternity determination might have on innocent children, the doctrines of res judicata and collateral estoppel are rigorously observed in the paternity context.

> A determination of paternity in a child support order, particularly where the issue has been contested or could have been contested, generally, precludes subsequent denials of paternity.

27C C.J.S. *Divorce* § 702 at 331 (1986).

> If the paternity of a child is placed in issue in an action for a divorce and is adjudicated, the matter is res judicata as between the husband and wife in any subsequent action or proceeding[.]

24 Am.Jur.2d *Divorce and Separation* § 1099 at 1084–85 (1983).

> Where the issue of paternity of a child has become res judicata upon the entry of the final judgment in the divorce action, the trial court may not thereafter grant a motion requiring blood tests of the parties and the child, even though the court believes that the tests would abate the husband's obsession that the child is not his.

24 Am.Jur.2d, *supra,* § 1100 at 1086.

■ In *Matter of Estate of Newell,* 765 P.2d 1353 (Wyo.1988), we identified the four criteria used to determine the applicability of res judicata. They are: " '(1) the parties were identical; (2) the subject matter was identical; (3) the issues were the same and related to the subject matter; and (4) the capacities of the persons were identical in reference to both the subject matter and the issues between them.' " *Id.* at 1355 (quoting *Matter of Swasso,* 751 P.2d 887, 890 (Wyo.1988)). A party cannot relitigate issues which could have been presented in the previous suit. *Davis v. Davis,* 56 Wyo. 524, 111 P.2d 124 (1941). The four criteria were met in this case: (1) appellant and the mother were the identical parties in the divorce proceeding; (2) the divorce proceeding dealt with the question of paternity and both the district court and the parties found that the son and daughter were born of the marriage; (3) the question of paternity was directly related to final adjudication of the divorce proceeding; and (4) both appellant and the mother had the same fundamental interests in determination of paternity in the divorce proceeding.

■ Similarly, the doctrine of collateral estoppel would also be applicable in this case. The paternity issue was decided by the agreement of the parties in their property settlement and confirmed by the district court in the divorce decree. Appellant, as the party against whom the plea is asserted, was a party to the prior divorce adjudication. Finally, paternity was an issue "necessarily decided" in the prior action and appellant had a full and fair opportunity to litigate the issue at that time.

■ The final preclusive factor in appellant's fatherhood disinclination is based on the doctrine of judicial estoppel. The doctrine arises where, as here, the parties identified the children as "issue of [the] marriage" in the divorce proceeding. As defined in Black's Law Dictionary 761 (5th ed.1979), judicial estoppel binds a party by his judicial declarations and he

> may not contradict them in a subsequent proceeding involving [the] same issues and parties. * * * Under this doctrine, a party who by his pleadings, statements or contentions, under oath, has assumed a particular position in a judicial proceed-

ing is estopped to assume an inconsistent position in a subsequent action.

Thus, where appellant affirmatively asserted in the property settlement agreement that both children were "of [the] marriage," he is estopped from his current inconsistent claim that neither child is his.

An examination of case law from other jurisdictions supports our result. In states that have adopted the Uniform Parentage Act, courts have consistently applied the doctrines of res judicata and/or collateral estoppel to bar relitigation of paternity after paternity was established in a prior divorce proceeding. This is so despite the fact that blood or genetic testing was generally not done concurrently with the divorce proceeding and that, instead, paternity was established either by agreement of the parties and/or by judicial decree.[6] The same result is also found in an overwhelming number of states that have not adopted the Uniform Parentage Act.[7]

6. *See Anonymous v. Anonymous,* 473 So.2d 502, 504 (Ala.Civ.App.1984) (finding that the minor child was " 'the parties' child' " in the pleadings and that the "child 'was born to the marriage' " in the divorce decree was res judicata as to determination of paternity); *De Weese v. Unick,* 102 Cal.App.3d 100, 162 Cal.Rptr. 259 (1980) (where the father stipulated to fatherhood in paternity proceeding and agreed to pay child support. That court said he was barred by res judicata from requesting a blood test four years later. The court took judicial notice of the pleadings in the paternity determination and also discussed the father's probable motivation in subsequently denying paternity); *Brown v. Superior Court In and For City and County of San Francisco,* 98 Cal.App.3d 633, 159 Cal.Rptr. 604 (1979) (court said res judicata controlled despite the fact that presumed father knew the child was not his at time of divorce but did not contest the issue); *A.G. v. S.G.,* 199 Colo. 403, 609 P.2d 121 (1980) (once paternity is established when not contested in a divorce proceeding it is not necessary to apply the Uniform Parentage Act in a later challenge. If the Act were to be applied to children with presumed fathers, it would lead to unnecessary litigation, disruption of family relationships, and would be contrary to the public policy underlying the presumption of legitimacy); *McNeece v. McNeece,* 39 Colo.App. 160, 562 P.2d 767 (1977) (presumed father barred by res judicata and estoppel of judgments from raising paternity as a defense in a child support action); *In re Marriage of Yakubec,* 154 Ill.App.3d 540, 107 Ill.Dec. 453, 507 N.E.2d 117 (1987) (the question of parentage was adjudicated and relied upon in determining the rights of the parties at the time the divorce decree was entered); *B.P.,* 536 A.2d 271 (where the mother was precluded from bringing an action to disestablish paternity when it had been agreed to in the divorce proceeding. That court said the doctrine of res judicata was not applicable because paternity was not actually litigated in the divorce action; however, the court applied the doctrine of repose based on the agreement of the parties); *Callison v. Naylor,* 108 N.M. 674, 777 P.2d 913 (1989) (court said collateral estoppel applied because father had the opportunity to raise the issue of parentage at the time of the divorce and failed to do so); *Clay v. Clay,* 397 N.W.2d 571

(Minn.App.1986), *dismissed* 484 U.S. 804, 108 S.Ct. 49, 98 L.Ed.2d 14 (1987) (presumed father stipulated to paternity in dissolution decree and was barred by res judicata and collateral estoppel from challenging paternity in a subsequent action); *State ex rel. Ondracek v. Blohm,* 363 N.W.2d 113 (Minn.App.1985) (res judicata precluded a defense of nonpaternity despite the fact that paternity was not contested in a prior separation hearing); and *In re Gilbraith,* 32 Ohio St.3d 127, 512 N.E.2d 956 (1987) (court agreed that a non-adversarial dissolution of marriage was res judicata, thereby barring a subsequent paternity action brought pursuant to the Uniform Parentage Act).

7. *See State, Dept. of Health and Rehabilitative Services Office of Child Support Enforcement v. Wright,* 498 So.2d 1008 (Fla.App.1986) (appellate court quashed a trial court order for a blood test to determine paternity. The final judgment of dissolution of marriage resolved the issue of paternity and was, therefore, res judicata); *Johnson v. Johnson,* 395 So.2d 640 (Fla.App.1981) (paternity issue resolved by stipulation of the parties and property settlement agreement in prior divorce was res judicata. The court stated: "To allow former husbands to come into court long after entry of final judgment and challenge the legitimacy of children born during their marriages would be chaotic at best. In addition, to require former wives and their children to submit to blood tests would, in many instances, be a humiliating experience for them." *Id.* at 641); *East v. Pike,* 163 Ga.App. 375, 294 S.E.2d 597 (1982) (res judicata barred father's non-paternity defense in a URESA action); *In re Marriage of Detert,* 391 N.W.2d 707 (Iowa App.1986) (res judicata prevented introduction of new blood test evidence that showed ex-husband could not have been the child's father); *Anderson v. Anderson,* 407 Mass. 251, 552 N.E.2d 546 (1990) (held that divorce decrees are conclusive and binding on the parties with regard to all matters actually or necessarily determined, including paternity); *Hackley v. Hackley,* 426 Mich. 582, 395 N.W.2d 906 (1986) (the need for finality as to a paternity determination compelled application of res judicata); *Cogan v. Cogan,* 119 Mich.App. 476, 326 N.W.2d 414 (1982) (appellate court found that father's re-

## CONCLUSION

We affirm the order of the district court granting the mother's motion to dismiss appellant's petition to determine nonexistence of the father-child relationship. Appellant, as a presumed father under Wyoming's Parentage Act, is barred from now contesting parentage of this young boy and girl by his failure to bring his action within a "reasonable time" pursuant to W.S. 14–2–104(a)(ii) and by the doctrines of res judicata, collateral estoppel and judicial estoppel.

CARDINE, J., filed a specially concurring opinion.

CARDINE, Justice, specially concurring.

I concur in the affirmance of the trial court's order of dismissal and in so much of the opinion as holds appellant's action for determination of parentage was not commenced within a reasonable time.

quest for blood tests was barred by the doctrine of collateral estoppel and that his appeal from a trial court determination holding the same was vexatious. The appellate court assessed punitive damages in an amount equivalent to the expenses incurred on appeal by the mother); *Stewart v. Stewart*, 91 Mich.App. 602, 283 N.W.2d 809 (1979) (res judicata and doctrine of estoppel barred father from disestablishing paternity); *In re Marriage of Campbell*, 741 S.W.2d 294 (Mo.App.1987) (despite no express finding of paternity in the divorce decree, the ex-husband was barred by res judicata from subsequently contesting paternity); *Sutton v. Sutton*, 56 N.C.App. 740, 289 S.E.2d 618 (1982) (court held divorce decree was binding on former husband despite the fact there was no finding in the decree as to paternity); *Chrzanowski v. Chrzanowski*, 325 Pa.Super. 298, 472 A.2d 1128 (1984) (appellate court vacated trial court order for a blood test and found full faith and credit should be accorded an out-of-state divorce decree based on the doctrine of collateral estoppel); and *Walters v. Walters*, 565 S.W.2d 586 (Tex.Civ.App. 1978) (res judicata barred father from relitigating paternity); however, *see Fairrow v. Fairrow*, 559 N.E.2d 597 (Ind.1990) (where father was allowed to relitigate child support issue based on "newly discovered medical evidence" eleven years after the divorce. *Id.* at 599. The court viewed the circumstances of the case as highly unusual and stated that it "[did] not intend to create a new tactical nuclear weapon for divorce combatants." *Id.* at 600).