**In the Matter of SAJ, a Minor Child.**

**JJ, Appellant (Respondent),**

v.

**AFM, Appellee (Petitioner).**

**No. C–89–3.**

Supreme Court of Wyoming.

Oct. 26, 1989.

Donald L. Painter, Casper, for appellee, petitioner.

Michael D. Zwickl, Casper, for appellant, respondent.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The primary question raised in this case is whether there was sufficient evidence to support the finding of the trial court that AFM was the father of the female child, SAJ. A collateral question is raised relating to the propriety of assessing against the Respondent, JJ, the mother of SAJ, the costs of blood tests obtained in connection with the paternity proceeding. We are satisfied that the evidence is sufficient to support the finding of the trial court with respect to paternity, and we affirm the judgment in that regard. We reverse the

ruling charging JJ with the expense of the blood tests because the cost of those tests is not established by any evidence of record.

In her Brief of Appellant, JJ states the issues to be:

"1. In Wyoming is a mere claim of 'sexual relations' sufficient to prove paternity?

"A. Could such a standard possibly be in the best interest of the minor child?

"2. Should blood testing costs in a paternity action be charged against a non prevailing party, without proof and when the tests were inadmissible in evidence?"

In his brief, AFM submits this counter-statement of the issues:

"1. Whether Appellee sustained his burden of proof in establishing his paternity.

"2. Whether the District Court erred in assessing costs for blood tests against Appellant."

On July 11, 1988, AFM presented a petition seeking to establish the relationship of father and daughter between himself and SAJ pursuant to the Wyoming Uniform Parentage Act, §§ 14–2–101 to 14–2–120, W.S.1977. He also attempted to gain custody of SAJ in this proceeding. SAJ had always resided with her mother, JJ, from the time of her birth on August 4, 1985.

A trial was conducted to the court that commenced on December 16, 1988 but was continued to, and concluded on, February 9, 1989. On February 15, 1989, the court issued its Decision Letter in which it ruled that AFM was the father of SAJ. This ruling was primarily attributable to the essentially uncontroverted testimony of AFM that he was having "sexual relations * * * [a]bout three or four times a week" with JJ at the time of SAJ's conception. Section 14–2–110, W.S.1977, addresses that concept in this way:

"(a) Evidence relating to paternity may include:

"(i) Evidence of sexual intercourse between the mother and father at any possible time of conception;

\* \* \* \* \* \*

"(v) All other evidence relevant to the issue of paternity of the child."

While the trial court did not make specific reference to this statute in its Finding of Fact and Conclusions of Law, it is the obvious basis for the court's ruling in favor of the father on the issue of paternity.[1]

■ The parties recognize the rule that paternity cases are civil actions in which the petitioner must assume the burden of establishing his, or her, case by a preponderance of the evidence. Section 14–2–112(a), W.S.1977. JJ contends that AFM did not meet this burden of proof. She argues that his testimony of "sexual relations" is uncorroborated and inconsequential in nature. She asserts that this court should ignore the finding of the trial court with respect to paternity and, instead, conclude that, as a matter of public policy and as a matter of logic, AFM failed to establish his case.

The manner in which JJ frames this issue fails to recognize this "fundamental rule of appeal" we apply in all cases which must be reviewed under a sufficiency of the evidence standard:

"[T]he evidence of the successful party is assumed to be true and is given every favorable inference which may be reasonably and fairly drawn from it while leaving out of consideration entirely the evidence of the unsuccessful party. Also, the trial court is the sole determiner of the credibility of the witnesses." *X v. Y*, 482 P.2d 688, 690 (Wyo.1971).

The legislature set the policy by providing in § 14–2–110, W.S.1977, that the evidence in a paternity case may include evidence of sexual intercourse at any possible time of conception. The trial court was entitled to believe AFM's testimony that he had "sexual relations" with JJ at a possible time of conception, and the trial court did believe that testimony. Apparently, the trial court accepted the term "sexual relations" as a synonym for "sexual intercourse," and that is a fair interpretation of

---

1. The trial court also ruled that it would be in the "best interests" of SAJ to give custody to JJ while awarding AFM reasonable visitation rights.

the statutory language. We hold that there was sufficient evidence, in accordance with Wyoming statute, to support the trial court's finding of paternity. The record establishes that the guardian ad litem appointed for SAJ recommended the conclusion that there was sufficient evidence to establish paternity.

■ JJ also includes in her contentions an argument that the finding was not in the "best interest" of SAJ. This argument is contrary to the recommendation of the guardian ad litem. Furthermore, that proposition is not relevant in an inquiry relating to paternity under the Wyoming Uniform Parentage Act.

■ Turning to the issue relating to the costs awarded for the expense of blood tests, we hold that, in this instance, the trial court abused its discretion in awarding the costs for the blood tests and reverse that aspect of its judgment. In the course of the paternity action, the parties did obtain blood tests after some difficulty in making the appropriate arrangements. In accordance with its usual practice, the trial court awarded AFM $408 as "costs" for those tests. Our determination that an abuse of discretion exists is grounded on the fact that nowhere in the record is there any evidence of the cost of obtaining those blood tests.

AFM did attempt to introduce the report of the blood test into evidence. It was excluded by the trial court, however, because it had not been designated as an exhibit pursuant to the pre-trial order. It may be that the ruling excluding the blood tests from evidence resulted in AFM's conclusion that there would be no purpose in establishing the expense of the blood tests at trial. In any event, the decision letter of the trial court is silent with respect to costs for the blood tests. In the final order, however, the court did award the costs of the blood tests against JJ. She objected on the ground that AFM had not proven those costs during the trial, but the trial court ruled that it was its "usual practice" to impose costs for the blood tests against the losing party (JJ, in this instance) in a paternity action.

We recognize that the Wyoming Uniform Parentage Act, specifically, § 14–2–114, W.S.1977, furnishes broad discretion to the trial court with respect to the assessment of costs. In pertinent part, the statute states:

> "The court may order reasonable fees of counsel, experts and the child's guardian ad litem, and other costs of the action and pretrial proceedings including blood tests, to be paid by the parties in proportions and at times determined by the court." [2]

The discretion afforded to the trial court, however, is not absolute. It must be exercised in accordance with our rule that "costs which are awarded to a litigant are limited in amount to those which the evidence shows actually have been incurred and shows to be reasonable." *Delgado v. Delgado*, 773 P.2d 446, 449 (Wyo.1989). See *Stauffer Chemical Company v. Robert Curry & Chuck Curry d/b/a/ Diamond Ring Farms*, 778 P.2d 1083 (Wyo. 1989).

In a paternity action, the costs of "blood tests" or "genetic tests" presumably are reasonably necessary for trial preparation. See *O's Gold Seed v. United Agri–Products Financial Services, Inc.*, 761 P.2d 673, 678 (Wyo.1988). This is the thrust of the statutory provision. Nevertheless, the costs of blood tests cannot be awarded in the absence of any evidence as to the amount. In an instance such as this, the award either was arbitrary because the court did not know the amount, or the court obtained the requisite information in an *ex parte* contact which, of course, is improper *vel non*. In either event, JJ had no opportunity to contest the fact or the reasonableness of the expense.

■ We hold that while such tests are presumptively necessary in a paternity action, that presumption may be rebutted.

---

**2.** Section 14–2–114, W.S.1977, was amended, effective June 8, 1989, to substitute "genetic tests" for "blood tests." The meaning and interpretation of the statute are intact despite this substituted language.

Awarding the expense of the tests as costs, in the absence of proof on the record of the actual amount charged for such tests, is arbitrary and must be perceived as an abuse of the trial court's discretion.

The judgment of the trial court is affirmed with respect to the issue of the relationship of father and daughter between AFM and SAJ. It is reversed with respect to the award of costs, and that aspect of the trial court's judgment is void.