In the Matter of the PATERNITY OF TS.

JCI, Appellant (Respondent),

v.

TL, by his guardians and conservators, TL and CL, Appellee (Petitioner).

No. C–95–13.

Supreme Court of Wyoming.

May 31, 1996.

John M. Burman, Faculty Supervisor, and Scott Kolpitcke, Student Director, of the UNIVERSITY OF WYOMING LEGAL SERVICES PROGRAM, Laramie, for Appellant.

John M. Scorsine, Burns, for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant JCI appeals from the order in which the district court found that Appellee TL was the father of TS (the child) and granted a partial summary judgment in favor of the appellee on the paternity issue.

We reverse and remand.

## ISSUES

The appellant presents three issues for our review:

1. Whether the District Court erred when it concluded that Appellee was the presumed father because he held out T.S. as his own child, and based that conclusion on disputed material facts?

2. Whether the District Court erred when it ruled on summary judgment that a trier of fact could not find that the Appellant presented clear and convincing evidence to rebut the presumption in favor of the Appellee under Wyo. Stat. § 14–2–102(a)(iv)?

3. Whether the District Court erred when it found that no presumption arose in favor of Appellant under Wyoming Statute § 14–2–109(e)(iv) because the Appellee is a "presumed natural father" rather than an "alleged parent," despite a blood test which shows the Appellant is probably the biological father?

## FACTS

On October 18, 1991, CS (the mother), who was not married, gave birth to the child. On January 31, 1994, the appellee petitioned the district court to establish his paternity and the child's custody and support, alleging that he was the child's natural father. In May 1994, the appellant joined in the paternity action, stating that he was possibly the child's biological father. Pursuant to the district court's order, genetic tests were conducted to determine who was the child's father. The tests revealed that the appellee was not the child's biological father and that a 99.99+ percent probability existed that the appellant was the child's biological father.

The district court nevertheless ruled that the appellee was presumed to be the child's father because he had taken the child into his home and held the child out as being his natural child. The district court concluded that the appellant had not presented clear and convincing evidence to rebut that pre-

sumption and granted a summary judgment in favor of the appellee. The appellant subsequently perfected his appeal to this Court.

## DISCUSSION

■ Our standard for reviewing summary judgments is well established: A summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *Roitz v. Kidman,* 913 P.2d 431, 432 (Wyo.1996); W.R.C.P. 56(c). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Hiltz v. Robert W. Horn, P.C.,* 910 P.2d 566, 569 (Wyo.1996).

■ The appellant contends that the district court erred when it granted a summary judgment in favor of the appellee. The district court concluded that the appellee was the child's presumed father under Wyo. Stat. § 14–2–102(a)(iv) (Supp.1995):

(a) A man is presumed to be the natural father of a child if:

. . .

(iv) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child.

When a man is presumed to be a child's father under § 14–2–102(a), only clear and convincing evidence can rebut that presumption. Wyo. Stat. § 14–2–102(b) (Supp.1995). Clear and convincing evidence is defined as being " ' "[t]hat kind of proof which would persuade a trier of fact that the truth of the contention is highly probable." *MacGuire v. Harriscope Broadcasting Co.,* Wyo., 612 P.2d 830, 839 (1980).' " *Story v. Wyoming State Board of Medical Examiners,* 721 P.2d 1013, 1014 (Wyo.1986) (quoting *LP v. Natrona*

*County Department of Public Assistance and Social Services (Parental Rights of GP),* 679 P.2d 976, 982 (Wyo.1984)).

When the mother filled out the birth certificate form, she indicated that the child's father was unknown. She subsequently changed the birth certificate form to show that the appellee was the child's father, and the official birth certificate reflected this information. The mother later averred that the appellee had coerced her into making the change to the birth certificate form.

The appellee and his father filed affidavits in support of the appellee's contention that he took the child into his home and held the child out as being his natural child. Those affidavits indicated that the mother and the child lived with the appellee and his family intermittently from the time of the child's birth until December 1994 and that the appellee and his family provided financial support during that time for the child. The mother filed an affidavit which contradicted the appellee's assertions. She claimed that, during the five to six months prior to June 1993, the appellee "never picked up" the child for visitation or personally gave her any money for the child's support.[1]

Although the evidence showed that the mother and the child lived with the appellee and his family on an intermittent basis, a genuine issue of material fact existed as to whether, under the statute, the appellee could be considered as being the child's presumptive father. The district court improperly weighed the evidence in deciding that the appellee took the child into his home and held him out as his natural child.

■ A genuine issue of material fact also existed as to whether the appellant's evidence was clear and convincing and would rebut any presumption which a trier of fact may determine exists in favor of the appellee.[2] The genetic test results were strong

1. In June 1993, the appellee was involved in a serious automobile accident which left him paralyzed.

2. The appellant is entitled to contest the appellee's paternity pursuant to Wyo. Stat. § 14–2–104(b) (1994). *See LC v. TL,* 870 P.2d 374, 378 (Wyo.), *cert. denied,* ⸺ U.S. ⸺, 115 S.Ct. 195,

130 L.Ed.2d 127 (1994). Section 14–2–104(b) provides:

(b) Any interested party may bring an action at any time for the purpose of determining the existence or nonexistence of the father and child relationship presumed under W.S. 14–2–102(a)(iv).

evidence, and we cannot say, as a matter of law, that the results were not clear and convincing evidence. *See, e.g., Vigil v. Tafoya,* 600 P.2d 721, 722 (Wyo.1979) (concluding that clear and convincing evidence rebutted the husband's presumption of parentage); *see also* WYO. STAT. § 14–2–109 (1994); *DLB v. DJB (Paternity of JRW),* 814 P.2d 1256, 1261–62 (Wyo.1991) (discussing the use of genetic testing in paternity cases).

Furthermore, on the basis of the genetic test results, the appellant is presumed to be the child's father under § 14–2–109(e)(iv):

> (e) The results of genetic tests shall have the following effect:
>
> . . .
>
> (iv) If the experts conclude that the genetic tests show that the alleged parent is not excluded and that the probability of the alleged parent's parentage is ninety-seven percent (97%) or higher, the alleged parent is presumed to be the parent and this evidence shall be admitted. This presumption may be rebutted only by clear and convincing evidence.

*See Holtz v. State ex rel. Houston,* 847 P.2d 972, 973 (Wyo.1993). At the trial which will be held after this remand, the trier of fact may be required to determine whether any clear and convincing evidence rebuts that presumption.

■ The district court apparently considered a number of policy factors in reaching its decision that the appellee was the child's father. The district court stated: "Resolving the question of paternity between [the appellee] and [the appellant] will ultimately determine custody of the child. The child's welfare and best interests must, in such cases, be the court's primary concern." We do not agree with the district court. The only issue presented in this phase of the case was the child's paternity. This Court has stated that a best interests analysis is not relevant in an inquiry which relates solely to establishing paternity. *JJ v. AFM (Matter of SAJ),* 781 P.2d 528, 530 (Wyo.1989).

The district court cited *R.C.L. v. K.S.C. (Adoption of R.S.C.),* 837 P.2d 1089 (Wyo. 1992), as being support for its decision to use

a best interests analysis in determining the paternity issue in this case. In *R.C.L.,* the mother was married to the husband when she gave birth to a child that she conceived with another man. 837 P.2d at 1092. The husband was presumed to be the child's father because the child was born into the marriage. 837 P.2d at 1092–94. The husband retained custody of the child after he and the mother divorced. 837 P.2d at 1092. The mother's second husband subsequently sought to adopt the child, and the mother consented to the proposed adoption. *Id.*

In *R.C.L.,* this Court looked at the child's best interests in the course of resolving the paternity issue and in determining which party should have custody of the child. 837 P.2d at 1092–93. A primary objective of the Court's best interests analysis in that case, as it is in all cases where a child is born into a marriage, was to preserve the child's legitimacy. 837 P.2d at 1093; *see also LC,* 870 P.2d at 378–79. The *R.C.L.* Court, therefore, held that the presumption that the husband is the father of a child born into the marriage may be sufficiently strong in certain instances to override biological parenthood. 837 P.2d at 1093; *see also Mak–M v. SM,* 854 P.2d 64, 66 (Wyo.1993).

The case at bar is different from *R.C.L.* Since the child was not born into a marriage, we do not need to concentrate on preserving the child's legitimacy. We must, therefore, apply the paternity statutes as they are written without engaging in an analysis of what is in the child's best interests. After the paternity issue has been resolved in this case, the district court may, in an appropriate proceeding, engage in a best interests analysis to determine custody, visitation, et cetera as they relate to the child.

Reversed and remanded for further proceedings consistent with this opinion.