**TL, by his guardians and conservators, TL and CL, Appellants (Petitioners),**

v.

**CS, n/k/a CI, TS and JI, Appellees (Respondents).**

**No. C–98–1.**

Supreme Court of Wyoming.

April 9, 1999.

Turner A. Rouse of Buchhammer and Kehl, Cheyenne, Wyoming; John M. Scorsine, Burns, Wyoming. Argument by Mr. Scorsine, for Appellants.

William L. Combs, Evanston, Wyoming, for Appellees.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

GOLDEN, Justice.

The primary issue in this establishment-of-paternity case concerns how we shall resolve the apparent conflict between the statutory paternity presumption arising in favor of a man who receives a minor child into his home and openly holds out the child as his natural child, Wyo. Stat. Ann. § 14–2–102(a)(iv) (Michie 1997), and the statutory paternity pre-

* retired November 2, 1998

sumption arising in favor of another man whom genetic testing evidence reveals to be the biological father of the minor child in question, Wyo. Stat. Ann. § 14–2–109 (Michie 1997). We first saw this case in *Matter of Paternity of TS*, 917 P.2d 183 (Wyo.1996). There, we reversed the district court's order of summary judgment in favor of TL, who received TS into his home and openly held out TS as his natural child, and remanded for trial the issue of paternity. The jury decided that the genetic testing evidence in favor of JI revealing a 99.99+ percent probability of biological paternity did not rebut the statutory presumption arising in favor of TL, and held in TL's favor. The district court overturned the jury's verdict and entered judgment as a matter of law in JI's favor. The court also awarded costs and attorney fees against TL.

We hold that the particular circumstances of this case required TL to prove that the results of the genetic testing were inaccurate or somehow deficient, the district court correctly ruled that he did not present any such evidence, and JI was, therefore, entitled to judgment as a matter of law. We affirm.

## ISSUES

Appellant presents these issues for our review:

I. Did the District Court err when it chose to disregard the jury's verdict and entered a judgment as a matter of law?

II. Is the assessment of costs and attorney fees against the Appellant proper?

III. Does the judgment of the Court remove from the Appellant any meaningful opportunity for appeal to this court?

Appellees rephrase the issues as:

I: Whether the District Court erred by entering judgment as a matter of law, notwithstanding the jury verdict regarding paternity.

II: Whether the trial court's award of attorney fees and costs against appellants was proper.

III: Whether appellants were deprived of meaningful appeal.

## FACTS

The mother (CI) of TS lived with TL intermittently from the time of the child's birth in 1991 through 1992. Genetic testing, however, established that a 99.99+ percent probability existed that JI was the biological father of TS. *Matter of Paternity of TS*, 917 P.2d at 184–85. Our previous decision in the paternity action regarding this child held that there was a genuine issue of material fact as to whether TL could be considered a presumed father under the statute by virtue of having held the child out as his own. *Id.* at 185. That issue was remanded for trial. Additionally, we remanded to determine whether any clear and convincing evidence rebutted the presumption of paternity created by the genetic testing. *Id.* at 185–86.

A jury trial was held to determine the paternity of TL, whether TL suffered any damages as a result of the alleged fraudulent actions of CI, and whether TL was entitled to custody and visitation with the child in the event the jury did not find that he was the natural father of the child. The jury concluded that TL was the natural father of the child and that CI did not commit fraud but was guilty of willful and wanton misconduct. CI and JI and the co-guardians ad litem for TS filed a motion for judgment as a matter of law or in the alternative for new trial. The trial court granted judgment as a matter of law, finding that TL did not introduce any evidence which contradicted the genetic testing and, as a matter of law, should not have been found to be the natural father of TS. That order declared JI the natural father of TS, denied TL custody and any right of visitation with the child, and ordered TL to pay the attorney fees of JI and the fees and costs of the co-guardians ad litem. The order also conditionally granted a new trial to the child on the issue of damages incurred by him because of TL's, JI's, and CI's deception regarding the identity of his natural father, and conditionally granted a new trial to TL on his claim for deceit against CI.

## DISCUSSION

### Standard of Review

■ On an appeal of the grant of a judgment as a matter of law, we review the record without deference to the views of the trial court to determine whether the evidence is such that without weighing the credibility of the witnesses, or otherwise considering the weight of the evidence, there can be but one conclusion reasonable persons could have reached. *Farmers Ins. Exchange v. Shirley*, 958 P.2d 1040, 1053 (Wyo.1998); *Ames v. Sundance State Bank*, 850 P.2d 607, 608–09 (Wyo.1993). We consider the evidence in the light most favorable to the party against whom the motion for judgment as a matter of law is directed, giving all reasonable and legitimate inferences to such evidence. *Ames*, 850 P.2d at 608–09.

### Presumptive Father Determination

TL's contentions on appeal can be summarized as assertions that Wyoming's Parentage Act recognizes that a non-biological father can demonstrate a sufficiently established father-child relationship warranting a jury verdict in his favor and, therefore, the district court erred in overturning the jury verdict. JI contends that these arguments and the evidence presented by TL at trial were a demonstration that declaring TL the natural father was in the best interests of the child, a factor this Court ruled irrelevant in our previous decision in this case. *Matter of Paternity of TS*, 917 P.2d at 186.

■ Wyoming has adopted a slightly modified version of the Uniform Parentage Act[1] in order to achieve a basic purpose of protecting the father-child relationship. *Matter of Paternity of JRW*, 814 P.2d 1256, 1259 (Wyo.1991). Generally, this Court has long recognized the strong state policy in legitimacy to avoid disruption of family relationships. *Matter of Paternity of SDM*, 882 P.2d 1217, 1225 (Wyo.1994); *LC v. TL*, 870

---

1. The other states adopting some version of the Uniform Parentage Act are: Alaska, California, Colorado, Delaware, Hawaii, Illinois, Kansas, Minnesota, Missouri, Montana, Nevada, New Jersey, New Mexico, North Dakota, Ohio, Rhode Island, and Washington.

P.2d 374, 380 (Wyo.1994), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The legislature's intent to insure children born during wedlock will not be considered illegitimate is expressed in the statutory presumption of paternity accorded to a man married to the mother at the time of the child's birth. *Matter of Paternity of TS,* 917 P.2d at 186. Although TL was never married to CI, the Act recognizes TL's presumptive legal relationship:

§ 14–2–102. **Presumption of paternity; rebuttal thereof.**

(a) A man is presumed to be the natural father of a child if:

\* \* \* \*

(iv) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child.

(b) A presumption under subsection (a) of this section may be rebutted in an appropriate action only by clear and convincing evidence. If two (2) or more presumptions under subsection (a) of this section arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. A presumption under subsection (a) of this section is rebutted by a court decree establishing paternity of the child by another man.

\* \* \* \*

Wyo. Stat. Ann. § 14–2–102 (Michie 1997).

JI's presumptive legal relationship can be established as provided by Wyo. Stat. Ann. ■ § 14–2–109(e)(iv) (Michie 1997):

If the experts conclude that the genetic tests show that the alleged parent is not excluded and that the probability of the alleged parent's parentage is ninety-seven percent (97%) or higher, the alleged parent is presumed to be the parent and this evidence shall be admitted. This presumption may be rebutted only by clear and convincing evidence.

Section 14–2–102(b) provides the standard by which conflicting presumptions arising under it are to be resolved. The presumption "founded on the weightier considerations of policy and logic controls." The Act does not, however, establish a standard to resolve conflicting presumptions arising under these two different sections of the paternity act as has occurred in this case. TL's contention that he can be declared the natural father raises the question whether the purpose of the Act is to determine the biological father or whether its purpose is to preserve the presumptive father-child relationship which is in the best interests of the child.

Ordinarily, such a question would require that we apply our statutory interpretation analysis and determine the legislative intent; however, our previous decisions have answered this question. In *Matter of SAJ,* 781 P.2d 528 (Wyo.1989), we held that the best interests of the child standard was not relevant in an action purely to establish paternity. *Id.* at 530. In that action, no other presumed father was involved. *Id.* at 529. In *Mak–M and DMM v. SM,* 854 P.2d 64 (Wyo.1993), we ruled that the ex-husband was the presumptive father where he and the mother were married soon after the child's birth and lived together for a time, although he was mistakenly named as the child's biological father on the child's birth certificate. *Id.* at 67. After their divorce, father was granted the care and custody of the child, and mother brought an action to determine the nonexistence of paternity and for custody. *Id.* at 66. We upheld the lower court's determination that the best interests of the child were served by sustaining the father's presumptive parenthood and held that the best interests of the child are not always served by a paternity determination of his or her biological father. *Id.* at 67.

■ In contrast, in the first action in this particular case, we held that a trial was necessary to determine if there is any clear and convincing evidence which rebuts the presumption established by genetic testing, and the best interests of the child analysis was not necessary. Our ruling was essentially a decision that the circumstances required that genetic testing resolve any conflict between statutory presumptions. *Matter of Paternity of TS,* 917 P.2d at 186. In this particular case, JI alleged that he was the

natural father of TS in January of 1994. The Act permits any man alleging that he is the natural father of a child having a presumed father under Wyo. Stat. Ann. § 14-2-102 to bring the action within six months of the child's birth or on or before December 31, 1994, whichever is later. Wyo. Stat. Ann. § 14-2-104(c) (Michie 1997). In summary, there are circumstances where the best interests of the child is at issue; however, in this particular case, that analysis was unnecessary, primarily because the statute permitted the action, the child was born out-of-wedlock, and the mother and biological father married.

We can foresee circumstances arising where a biological father should not be permitted to allege paternity and disrupt an established, presumptive father-child relationship, and we assume that there are any endless variety of scenarios regarding paternity which can arise and that will have to be carefully considered by a district court before permitting a paternity determination. However, the district court in this case properly interpreted our ruling to mean that the genetic testing was the prevailing presumption and could only be rebutted by clear and convincing evidence attacking the accuracy of the testing results. We affirm the order directing judgment as a matter of law for JI and CI.

*Attorney Fees*

TL contends the district court sent a letter before trial that it would award attorney fees against TL if CI and JI prevailed at trial. He contends this indicated prejudgment and the award of attorney fees is an abuse of discretion. The Act states:

> If a man alleging paternity fails to establish his paternity, the court shall order him to pay all court costs and reasonable attorney fees to the prevailing party.

Wyo. Stat. Ann. § 14-2-104(c) (Michie 1997).

> The court may order reasonable fees of counsel, experts and the child's guardian ad litem, and other costs of the action and pretrial proceedings including genetic tests, to be paid by the parties in proportions and at times determined by the court.

Wyo. Stat. Ann. § 14-2-114 (Michie 1997).

This Court's reversal of the summary judgment in favor of TL and its remand for trial to determine if there was any clear and convincing evidence rebutting the results of the genetic testing informed TL that this particular aspect was the only paternity question at issue for trial. TL did not present any evidence on this issue at trial, yet he continued to contest paternity. The trial did address other important issues, but TL continued to allege paternity, he did not prevail, and under the plain wording of the statute, the district court was entitled to order him to pay all of the court costs and reasonable attorney's fees to the prevailing party. Wyo. Stat. Ann. § 14-2-104(c) (Michie 1997).

A denial or award of attorney fees under Wyo. Stat. Ann. § 14-2-114 is reviewed for an abuse of discretion. *LC v. TL*, 870 P.2d at 381. The district court did not give any reasons for awarding costs to the co-guardians ad litem; however, it could reasonably have concluded that TL should pay these costs for continuing to improperly contest paternity and because he did not prevail on the issues involving paternity, custody, and visitation. TL's broad accusations that the court prejudged the case simply have no bearing on the issue of awarding these kinds of costs and do not persuade us there was an abuse of discretion. Without any other reason advanced as to why this award of costs was an abuse of discretion, we will uphold this portion of the order.

*Meaningful Appeal*

TL contends that the district court intended to deny him an effective appeal or remedy when it ruled that:

> [TS] is hereby granted a new trial on the issue of damages incurred by said minor child on account of [TLs] and Respondents deceiving him as to the identity of his natural father. This cause of action was not pleaded on behalf of [TS]. The grant of a new trial is therefore conditioned on an appeal of the judgment, order for a new trial on appeal and appropriate amend-

ments to the pleadings; or on the filing of a motion for new trial by [TL]. . . .

[TL] . . . shall be granted a new trial on his claim for deceit against Respondent [CI]. The grounds for conditionally granting a new trial to [TL] on this issue are that judgment is being entered against [TL] notwithstanding the jury verdict. . . . [T]he alternative motion for new trial made by Respondents [JI and CI] is hereby granted. This grant of a new trial is conditioned on vacation or reversal of the paternity ruling on appeal. . . .

His precise concern appears to be with that part of the ruling stating "[t]he grant of a new trial is therefore conditioned on an appeal of the judgment." JI and CI contend that the district court merely complied with W.R.C.P. 50(c)(1) which mandates that it set out any conditions which must occur before a new trial is granted. That rule provides:

(c) *Granting renewed motion for judgment as a matter of law; conditional rulings; new trial motion.*

(1) If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted

and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. In case the motion for a new trial has been conditionally denied, the appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court.

JI and CI further state that TL has not been affected by the conditions because he did not file a motion for a new trial. We disagree with TL's contention that the order automatically results in a new trial to allow TS to sue TL for damages if TL appeals. We read the order as attempting to anticipate the issues which might be raised if a new trial were to be granted following appeal. Whether or not the district court could properly order a new trial under Rule 50 on the basis of TL's filing an appeal is not an issue before us, and we do not address it. From the record before us, we do not see an intent by the district court to include this wording in the order as a financially punitive measure aimed at discouraging TL from appealing.

We affirm the order granting judgment as a matter of law.