2004 WY 13

**JG, Appellant (Respondent),**

**v.**

**STATE of Wyoming, DEPARTMENT OF FAMILY SERVICES; State of Wyoming, ex rel., JLVW, minor child, Appellees (Petitioners).**

No. C–03–4.

Supreme Court of Wyoming.

Feb. 25, 2004.

Representing Appellant: Carol K. Watson of Phelan–Watson Law Office, Cheyenne, Wyoming.

Representing Appellees: Patrick J. Crank, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Dan Wilde, Senior Assistant Attorney General; and Sue Chatfield, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] In a pleading filed in the district court on December 16, 2002, Appellant, JG, and the State of Wyoming, Department of Family Services (DFS), as well as the mother of the affected child (JLV), stipulated in a settlement agreement that JG was not the biological father of JLV. JLV was born January 23, 1991.[1] The basis for this stipulation was that genetic testing had ruled out the possibility that JG could be the biological father of JLV.[2] The district court found that JG had not timely requested genetic testing

---

1. The settlement agreement was structured to resolve a ten-year-long paternity and child support dispute that went awry in 1992 and never really got back on the right track.

2. The record demonstrates that JLV did not have counsel or a guardian ad litem during the most recent proceedings, though JLV did have a guardian ad litem in the early proceedings. The most recent version of the parentage statutes does not require that a minor child be represented. Wyo. Stat. Ann. § 14–2–812 (LexisNexis 2003) (counsel may be appointed for a minor child if the child's interests are not otherwise adequately represented). At the time these proceedings were initiated, the governing statute required that a guardian ad litem be appointed for a minor child. Wyo. Stat. Ann. § 14–2–107 (Michie 1986).

and had conceded he was the father of JLV in the paternity proceedings that occurred during 1992–97. The district court also determined there was no legal basis for altering the earlier paternity judgment, concluded that the applicable statute of limitations had run, rejected the stipulation, and denied the motion to vacate the judgment that was in place. We will vacate the order from which this appeal is taken and remand to the district court for entry of an order consistent with this opinion and the stipulation of the parties.

## ISSUES

[¶ 2] JG advances these issues:

1. Whether [JG's] procedural and substantive due process rights were violated by the district court for failing to follow statutory procedures in the determination of paternity, rendering the district court orders finding paternity in [JG] as null and void.

2. Whether the district court had jurisdiction to promulgate an order which denied [JG's] and the State of Wyoming's stipulated agreement to vacate the finding of paternity in [JG].

3. Whether the applicable statute of limitation, Wyo. Stat. § 14–2–104(a)(ii)(B) was tolled until [JG] obtained a paternity test in June of 2001.

DFS initially posited this statement of the issue:

Whether the district court erred in refusing to accept the parties' stipulated agreement seeking to vacate the 1993 paternity order?

[¶ 3] In its initial briefing, DFS conceded that the district court did err in that respect. Thus, at that point, this case was in the somewhat unusual posture of having neither Appellant nor Appellee arguing that the district court's order could or should be affirmed. However, on August 14, 2003, before this Court held a conference on the case as a part of the expedited docket, DFS submitted a letter to the Court suggesting that the district court's conclusion that JG had by-passed several opportunities to present grounds for relief from the judgment under W.R.C.P. 60(b) [3] provided a potential basis for affirmance of the district court's order.

## FACTS AND PROCEEDINGS

[¶ 4] On April 6, 1992, DFS filed a petition to establish paternity in the district court alleging that JG was the biological father of JLV. There was considerable difficulty locating both JLV's mother and JG, so service of process was not completed until September 28, 1992. JG, who resided at the Wyoming State Penitentiary at that time, filed a request for the appointment of counsel and an affidavit of indigency on October 20, 1992. By letter dated October 27, 1992, the district court advised JG as follows:

> At this point in the process, it is unnecessary for you to have an appointed attor-

**3.** W.R.C.P. 60(b) provides:
(b) *Other Reasons.*—On motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be

made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding as provided by statute, or to grant relief to a party against whom a judgment or order has been rendered without other service than by publication as provided by statute. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

ney. The Statute requires a hearing and if you deny paternity, a blood test will be ordered. If the blood test indicates that you are the probable father and you still deny paternity, the Court will appoint an attorney to represent you. On the other hand, if the test indicates that you are not the father, then you have no further obligation and all the costs of this action will be paid by the State.

Under the circumstances, I will ask the attorney in this case to arrange for a telephone conference call and will ask the Warden to make you available at a telephone.

[¶ 5] Because the governing statutes that were in place when these proceedings were in process are so important to the resolution of the issues raised, we summarize them here. JG was not presumed to be the natural father of JLV. Wyo. Stat. Ann. § 14–2–102 (Michie 1986 and Supp.1992).[4] Thus, in order to establish parentage, it was required that paternity be established by blood tests or other credible evidence.[5] Blood tests are critically important evidence in the context of parentage cases. No blood tests were ordered.

[¶ 6] The record in the instant case contains no transcripts or other evidence. Wyo. Stat. Ann. § 14–2–108 (Supp.1992) required that a hearing on the paternity action be held as soon as practicable and that a record of the proceeding be kept. Apparently, a hearing was held, and JG appeared by phone, but no record of that hearing was made. Wyo. Stat. Ann. § 14–2–109(b) and (c) (Supp.1992) required the district court to order genetic tests if requested by a party, and to order further independent tests, if requested. Under that same statute, the district court also had authority to order genetic testing on its own motion. Pursuant to Wyo. Stat. Ann. § 14–2–112(d) (Supp.1992), trial by jury was

available if a party requested it. According to the record on appeal, no such request was made, but the record reflects that JG was incarcerated, indigent, and did not have the benefit of counsel. Wyo. Stat. Ann. § 14–2–116(a) and (b) (Supp.1992) provided that "[t]he court shall appoint counsel for a party who is financially unable to obtain counsel" and that "[i]f a party is unable to pay the cost of a transcript, the court shall furnish on request a transcript for purposes of appeal." Here, no transcript could have been made available to JG, because the proceedings, to the extent there were meaningful proceedings, were not reported or otherwise memorialized.

[¶ 7] The hearing in this case was held before a district court commissioner, and his findings and conclusions were referred to the district court for approval and signature. The Judgment and Order of Paternity and Support, entered on February 8, 1993, included a statement that JG appeared pro se by phone from the State Honor Farm and that the court commissioner heard testimony and received evidence.

[¶ 8] On March 17, 1997, DFS filed in the district court a petition for order to show cause why JG should not be found in contempt for failure to pay child support. Such an order was issued on March 20, 1997, and a new Judgment and Order was entered on May 30, 1997. This judgment also recited the taking of evidence and testimony but it too was not summarized in the judgment, nor is it otherwise found in the record. The only matter that is entirely clear is that JG never received the original judgment of paternity. DFS conceded that JG did not receive a copy of that judgment; however, the district court did not assign fault for that failure (State should have located JG; JG should have

---

4. In the intervening years, the statutes articulating the process for determining paternity (parentage) have been amended many times. Currently, they are found at Wyo. Stat. Ann. §§ 14–2–801 through 14–2–823 (LexisNexis 2003). Under the usual circumstances, and to the extent necessary, we would apply the statutes that were in effect at the time the paternity action was initiated, or the most recent statute if that statute were more favorable to the affected party. Suf-

fice it to say here that the most recent version of the parentage statutes is not more favorable to any of the parties to this action.

5. This case graphically illustrates the rather serious consequences of relying on an admission of intercourse, or even an admission by the alleged father that the child is his, when blood tests can usually resolve this factual issue definitively.

inquired about the result of the 1992–93 proceedings) and confirmed the 1993 judgment.

[¶ 9]   In a letter dated June 24, 1997, JG conveyed to the district court his concerns about the renewed paternity determination. The letter stated that JG did not know if he was the father of the child, had never admitted that he was the father of the child, and that he had timely requested both counsel and genetic testing.   JG requested that genetic testing be ordered and offered to pay for it.   The district court treated JG's letter as a motion for genetic testing and to vacate the 1997 judgment.   In an order entered on June 30, 1997, the district court denied any relief.

[¶ 10]   On December 17, 1999, DFS filed another motion for order to show cause why JG should not be held in contempt for failure to pay child support.   Appended to that motion was the 1993 judgment, but not the 1997 judgment.   Such an order was issued on December 17, 1999, and re-issued on May 30, 2000.   JG did not appear and another judgment was entered on September 26, 2000. The order indicated that evidence and testimony were taken by the district court. Again, if such evidence and testimony was taken, it was not summarized in the order, nor does it otherwise appear in the record.

[¶ 11]   On September 20, 2001, JG filed a motion to set aside the judgment of paternity, as well as the child support ordered over the years.   In that pleading, JG reiterated that he asked for counsel at the time these proceedings were initiated, that he requested and was denied genetic testing, and that he did not know of the 1993 judgment until 1997.   Continuing, JG asserted that during the period 1997 through 2001, he did not have funds to hire an attorney.   In July of 2001, JG finally obtained counsel at a fee of $200.00 a month.   JG also obtained genetic testing.   That testing revealed that JG was not the biological father of JLV. By order entered on February 1, 2002, the district court determined that the five-year statute of limitations had run, and dismissed JG's motion.   *See* Wyo. Stat. Ann. § 14–2–104(a)(ii)(B) (LexisNexis 2001).   JG appealed that order to this Court on February 21,

2002.   On May 29, 2002, an attorney for DFS filed in the district court a notice of buccal swab for genetic testing, and a second such notice was filed on June 18, 2002.   On June 26, 2002, JG's appeal of the district court's February 1, 2002 order was dismissed for want of prosecution. On July 19, 2002, DFS filed the results of the genetic testing in the district court.   The tests established that JG was not the biological father of JLV.

[¶ 12]   On December 16, 2002, a pleading styled as a "Stipulated Settlement Agreement" was filed in the district court.   In that stipulation DFS, JG, and JLV's mother agreed that JG was not the biological father of JLV and that he owed no past or future child support to JLV's mother or to the State.   No hearing was held on that motion. On January 14, 2003, the district court entered its order disallowing the stipulated settlement.   JG's appeal from that order is the subject of the instant appeal.

## DISCUSSION

[¶ 13]   We are confronted by an unusual set of circumstances that we hope make this case *sui generis*—i.e., a case unlike any other.[6]   We have reviewed parentage cases in many and varied circumstances, but few, if any, of our precedents provide meaningful guidance in sorting out this matter.   Indeed, it may do a disservice to our jurisprudence with respect to the resolution of parentage cases to attempt to explicate or justify what transpired in this case.

[¶ 14]   In a case that bears some similarity to this one, we held:

Father injects the "best interests of the child" at several junctures.   There are some circumstances where the best interests of the child are at issue in a paternity proceeding.   *TL ex. rel. TL v. CS*, 975 P.2d 1065, 1069 (Wyo.1999).   However, much like the *TL* case, such an analysis was rendered unnecessary because the statute permitted this action and mandated genetic testing if requested by even one party. *Id.* Here, we do not have a circumstance where a biologic father seeks to disrupt an

---

**6.**   In its brief, DFS characterizes the circumstances of this case as "unique."

established father-child relationship. Instead, we have a presumptive father who seeks to dissolve what he contends is not an established and functional father-child relationship in favor of a man who has been determined to be the biologic father. Courts simply are not always capable of resolving the sorts of profound human dilemmas that are brought to their doorsteps, at least not in a way that will avoid all potential hardship to even innocent parties. Here, though Child has two presumptive fathers, he has none who wishes to fully embrace that role and the responsibility that goes with it. We cannot disagree with the position of Mother, JDB, and the GAL (as well as the reluctantly-reached decision of the district court) that "the truth" was the best result that could be salvaged in this case. *In re State, Division of Child Support Enforcement, ex rel. NDB*, 2001 WY 118, ¶ 14, 35 P.3d 1224, ¶ 14 (Wyo.2001).

[¶ 15] In addition, we have held that the district court must ensure that a complete record of parentage proceedings is created, including the reporting of any hearings (thus ensuring the preservation of all evidence and the testimony of any witnesses). *JAG v. State, Department of Family Services*, 2002 WY 158, ¶ 18, 56 P.3d 1016, ¶ 18 (Wyo.2002).

[¶ 16] We have long held that parentage actions must be conducted in conformance with the strict procedural requirements set out in the parentage statutes. *CSP v. DDC*, 842 P.2d 528, 532 (Wyo.1992); *Matter of TLB*, 771 P.2d 811, 813 (Wyo.1989) (holding that failure to strictly follow statutory procedures results in a void judgment); *AEI v. JDM*, 758 P.2d 22 (Wyo.1988).

[¶ 17] Finally, we conclude that W.R.C.P. 60(b) cannot serve as a basis to affirm the district court because the 1993 and 1997 judgments are void for the reasons set out above.

## CONCLUSION

[¶ 18] We hold that the 1993 and 1997 judgments of the district court are void for failure to strictly follow required statutory procedures and because no record was made of the proceedings that produced those judgments. Further, like the *NDB* case cited above, "the truth" is the best result that can be salvaged in this case. The order from which the appeal was taken is vacated, and this matter is remanded to the district court for entry of an order consistent with this opinion, as well as the stipulation of the parties.