[Civ. No. 47537. First Dist., Div. Three. Oct. 19, 1979.]

AIDA BROWN, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY
OF SAN FRANCISCO, Respondent;
RAYMOND BROWN, Real Party in Interest.

634

---

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Laurence K. Sullivan, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

William P. Rhetta for Real Party in Interest.

OPINION

**WHITE, P. J.**—This petition is by a mother seeking an increase in child support payments, and challenges the right of the purported father to compel her and her child to submit to blood testing for paternity. It also challenges an order compelling the child to attend a deposition. The Attorney General, attorney for petitioner, contends that res judicata bars inquiry into the issue of paternity and that the blood testing and discovery is relevant only to the paternity issue.

Raymond Brown, real party in interest in this proceeding, obtained a default divorce decree in 1968, which decree recited, inter alia, that Bridgett Brown, born June 25, 1963, was his child. It required him to provide $50 per month for her support, and permitted him reasonable visitation rights. The same decree recited that Raymond Brown was adjudged not to be the father of Kimberley Anne Brown, born to petitioner on March 28, 1962.

Ten years later, petitioner, Raymond Brown's ex-wife Aida Brown, moved to increase child support to $125 per month based upon an increase in Raymond Brown's income. He defended, contending that Bridgett was not his child. In deposition testimony Raymond admitted that he had known from the time of her birth that she was not his child, but stated that he did not try to prove nonpaternity in the divorce proceedings because his attorney advised him it would be too difficult to prove. He has since obtained hearsay evidence that petitioner has informed Bridgett that another man is her father and has informed the man of the same.

In order to defend against the request for increased child support, Raymond Brown moved for blood tests of petitioner and Bridgett and sought to depose Bridgett. After hearing held April 5, 1979, the trial court ruled in Raymond's favor on both issues, rejecting petitioner's contention that the prior divorce decree was res judicata on the paternity issue. After a further hearing on May 24, 1979, the trial court denied reconsideration of its earlier ruling.

During the May 24, 1979, proceedings the trial court acknowledged that he was standing on thin ice legally. Any ice that may have existed on May 24, 1979 melted on July 20, 1979, when our decision in *In re Marriage of Guardino* (1979) 95 Cal.App.3d 77 [156 Cal.Rptr. 883], was certified for publication.

In *Guardino* we ruled that a paternity determination in an interlocutory decree of dissolution was res judicata on the issue in the absence of extrinsic fraud or extrinsic mistake. We concluded there that where a father was aware of the true facts at the time of dissolution and questioned his own paternity at the time, his failure to contest paternity during the dissolution proceedings barred him from subsequent attack. As we stated there, quoting from *Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 472 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368]: "The principles of res judicata demand that the parties present their entire case in one proceeding. 'Public policy requires that pressure be brought upon litigants to use great care in preparing cases for trial and in ascertaining all the facts. A rule which would permit the reopening of cases previously decided because of error or ignorance during the progress of the trial would in a large measure vitiate the effects of the rules of res judicata.' (Rest., Judgments, § 126, com. a.)" (95 Cal.App.3d at p. 91.)

This case is controlled by *Guardino*. Real party, by his own assertion always aware that Bridgett was not his child, had the obligation to use all means to prove same during the divorce proceedings. It is too late now to reverse the legal paternity he established in 1968 when he requested and obtained his divorce decree. He has shown no evidence of extrinsic fraud or mistake.

The trial court here appeared to take the position that though Raymond Brown had not shown extrinsic fraud, the blood test and discovery might assist him in doing so and was therefore proper trial preparation. However, the blood tests are directed to the ultimate issue, paternity. They will reveal nothing about whether extrinsic fraud was practiced upon Raymond Brown or whether there was some extrinsic mistake. In light of the privacy interests of Aida and Bridgett Brown, such test should be ordered only *after some showing of facts revealing extrinsic fraud or mistake.*

Real party argues that the deposition is necessary in order to determine whether Bridgett is receiving support from the man she was told is her natural father, apparently seeking to uphold the trial court's order on the ground that the discovery relates to the amount of support required. However, the entire thrust of the argument below was that Raymond Brown was entitled to contest paternity. The trial court order concerning Bridgett's deposition was certainly based in substantial part upon a conclusion that res judicata did not protect the paternity deter-

mination. Thus, the order concerning the deposition must be vacated. If real party has a legitimate need to depose Bridgett to determine facts pertaining to issues other than paternity, he may seek such discovery anew.

The law is clear and the court sees no purpose to be served by issuing an alternative writ. The issues have been fully presented, and an alternative writ would only delay the proceedings further. We therefore issue a peremptory writ in the first instance (Code Civ. Proc., § 1088; *San Diego Wholesale Credit Men's Assn.* v. *Superior Court* (1973) 35 Cal.App.3d 458 [110 Cal.Rptr. 657]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165]).

Let a peremptory writ of mandate issue, directing the trial court (1) to vacate its orders of May 1, 1979, requiring petitioner and her minor child to submit to paternity blood testing, and denying petitioner's motion to quash the deposition of Bridgett Brown, and (2) to enter an order granting petitioner's motion to quash the deposition.

Scott, J., and Feinberg, J., concurred.