STATE of Kansas ex rel. Jeanne DANIELS, Obligee–Appellee,

v.

Kenneth R. DANIELS, Obligor–Appellant.

No. 90CA1469.

Colorado Court of Appeals, Div. I.

Aug. 15, 1991.

Robert J. Loew, County Atty., Ingrid H. Holmes, Asst. County Atty., Commerce City, for obligee-appellee.

Richard O'Brien Moore, Denver, for obligor-appellant.

Opinion by Judge DUBOFSKY.

In this proceeding under the Uniform Reciprocal Enforcement of Support Act (URESA), § 14–5–101, et seq., C.R.S. (1987 Repl.Vol. 6B), Kenneth R. Daniels, father, appeals the order of the court determining that he was barred by the doctrine of *res judicata* from asserting nonpaternity and, therefore, denying his request for blood tests. We affirm.

The marriage between father and Jeanne M. Daniels, mother, was dissolved by a Kansas decree of divorce entered in 1979. Although father appeared in court, he did not respond to the petition and chose not to be represented by counsel. In the decree, the court found that the parties had two children as a result of their marriage, that the mother should have custody, and that father should pay child support.

In 1990, a URESA action was filed both to increase support and to collect arrearages. Although admitting that he had supported the children on a regular basis since the date of the divorce, father filed a motion requesting that the mother and two children submit to blood tests to determine paternity. Father asserted that, based on certain statements made by his former wife indicating her infidelity and the fact that he had not had sexual relations with her during the period of conception, he had "always known" that the two minor children were not fathered by him.

The trial court initially granted father's request that the parties submit to blood tests. Thereafter, however, it reviewed the briefs of both parties which addressed the issue of whether father was barred from asserting the defense of nonpaternity because of either the statute of limitations or the doctrine of *res judicata*. Relying on the cases of *McNeece v. McNeece*, 39 Colo. App. 160, 562 P.2d 767 (1977) and *Peercy v. Peercy*, 154 Colo. 575, 392 P.2d 609 (1964), the trial court concluded that father had the ability and the responsibility to raise the issue of paternity at the original dissolution hearing and that, having failed to do so, he was forever barred from relitigating that issue.

Father asserts that the issue of paternity was not specifically raised or addressed in the original dissolution proceeding. Therefore, he argues that he did not have a full and fair opportunity previously to litigate the issue. We are not persuaded by these arguments.

■ *Res judicata* bars relitigation, not only of all issues actually decided, but of all issues that might have been decided. *Denver v. Consolidated Ditches Co.*, 807 P.2d 23 (Colo.1991).

■ The issue of paternity arises in relation to the claim for child support and is either explicitly or implicitly at issue in every dissolution proceeding in which mat-

ters of child support must be addressed. *State ex rel. Ondracek v. Blohm,* 363 N.W.2d 113 (Minn.App.1985); *see* § 14–10–107(2)(d), C.R.S. (1987 Repl.Vol. 6B). And, a child support order can be made against a putative father if paternity is uncontested. *People in Interest of R.T.L.,* 780 P.2d 508 (Colo.1989). Hence, a denial of paternity should be made as part of a dissolution action since, at that time, the court by necessary implication determines the paternity of the child when it makes a support order. *McNeece v. McNeece, supra; see also Peercy v. Peercy, supra.*

■ If the issue of paternity is raised in conjunction with a determination of child support under the Uniform Dissolution of Marriage Act, the court must determine, according to procedures outlined under the Uniform Parentage Act (UPA), § 19–4–101, et seq., C.R.S. (1990 Cum.Supp.), whether the party to be charged owes a duty of support to the child. *Smith v. Casey,* 198 Colo. 433, 601 P.2d 632 (1979); *see also In re Marriage of De La Cruz,* 791 P.2d 1254 (Colo.App.1990); *In re Marriage of Burkey,* 689 P.2d 726 (Colo.App.1984).

In *People in Interest of R.T.L., supra,* our supreme court held that the statute of limitations found in § 19–4–107(1)(b), C.R.S. (1990 Cum.Supp.) of the UPA does not preclude a presumed father from asserting nonpaternity as a defense in a child support proceeding brought under Article 6 of the Colorado Children's Code. Hence, the dispositive issue, which was not addressed in *People in Interest of R.T.L., supra,* is whether the doctrine of. *res judicata* applies to bar a party from raising the defense of nonpaternity in a non-Article 6 action which is brought to enforce a previously entered order of child support.

■ In furtherance of its purpose to protect the child's interests, rights, and relationships, the UPA favors the strong presumption of legitimacy accorded to a child born in wedlock. *People in Interest of S.L.H.,* 736 P.2d 1226 (Colo.App.1986); 9B Uniform Laws Annot., Matrimonial, Family and Health Laws 287 (1987). That presumption was considered at common law to be one of the strongest presumptions known to the law. Thus, a child who has the benefit of this strong presumption of legitimacy should reasonably be able to rely on it absent a judicial action by the presumed father challenging paternity. *B.G. v. S.G.,* 199 Colo. 403, 609 P.2d 121 (1980).

Under the present statutory scheme, the UPA provides the procedures by which a paternity determination is to be made when paternity is disputed. *People in Interest of R.T.L., supra.* However, although distinct rights pursuant to the UPA may exist to challenge the paternity of a child who is presumed to be legitimate, those rights must be exercised within a strictly limited time. *People in Interest of R.T.L., supra; M.R.D. v. F.M.,* 805 P.2d 1200 (Colo.App. 1991) (presumed father was late in bringing action to disestablish paternity).

Other states have concluded that the UPA does not mandate, either expressly or by implication, the exclusion of the doctrine of *res judicata* from parentage actions. *See, e.g., In re Gilbraith,* 32 Ohio St.3d 127, 512 N.E.2d 956 (1987). They reason that the same considerations underpinning *res judicata* as a doctrine of general significance apply with equal force in parentage actions and, therefore, hold that there is no sound policy reason for denying effect to the doctrine in such cases. *In re Gilbraith, supra.*

Rather, the principles of *res judicata* demand that the parties present their entire case in one proceeding. And, public policy requires that pressure be brought upon litigants to use great care in preparing cases for trial and in ascertaining all of the facts. *Brown v. Superior Court,* 98 Cal.App.3d 633, 159 Cal.Rptr. 604 (1979).

As the court in *Gilbraith* observed:

"The establishment and maintenance of the various aspects of the relationship between parent and child is a particularly intricate, sensitive and emotional process with which courts should be reluctant to interfere. In those cases where, by force of events, judicial intervention occurs, where the matter of parentage is determined with finality and in the absence of

fraud, and where that determination is not later vacated, either on direct appeal or pursuant to a recognized legal remedy such as that set forth in [the Ohio equivalent of C.R.C.P. 60(b) ], the policy of this state requires, in sum, that the parent-child relationship be shielded from the unsettling effects of further judicial inquiry, and that relitigation of parentage be barred, as a general rule, in any subsequent actions...."

There is nothing within the UPA that authorizes a father to raise the issue of paternity subsequent to the resolution of that issue in the final decree of dissolution. To the contrary, collateral estoppel bars such action since the father is a party to both proceedings, the issue (of the duty to support) is identical, and a final judgment is rendered on the merits in the dissolution proceeding. *In re Marriage of Holland*, 224 Mont. 414, 730 P.2d 410 (1986); *see also Callison v. Naylor*, 108 N.M. 674, 777 P.2d 913 (N.M.App.1989) (collateral estoppel); *Gardner v. Gardner*, 371 Pa.Super. 256, 538 A.2d 4 (1988) (*res judicata*).

■ We find the reasoning of these cases persuasive and, therefore, hold that the UPA does not mandate the exclusion of the doctrine of *res judicata.*

■ The facts in this case are illustrative of the propriety of this view. Here, father was aware of the relevant facts at the time of dissolution and questioned the children's paternity at that time, yet he did not raise the defense until over ten years later. Therefore, we hold that the failure to raise the defense of nonpaternity during dissolution proceedings bars a presumed father from collaterally attacking the determination of paternity that implicitly supports the award of child support incident to those proceedings. *See Brown v. Superior Court, supra; In re Marriage of Holland, supra.*

Furthermore, the result we reach here is not inconsistent with the rule announced in *People in Interest of R.T.L., supra.* There, both the mother and the presumed father acknowledged in the dissolution proceeding that the child was not the presumed father's biological child. Indeed, an amended decree was entered reflecting this acknowledgment. Thus, under the circumstances of *R.T.L.*, the doctrine of *res judicata* was not a bar to father's raising the defense of nonpaternity in the later Article 6 action which *for the first time* sought to impose a child support obligation upon him.

Here, a child support order was entered as part of the dissolution decree. Therefore, it was father's responsibility to raise the defense of nonpaternity during those proceedings. Having failed to do so, he is barred by the doctrine of *res judicata* from collaterally raising that defense. *See Brown v. Superior Court, supra; In re Marriage of Holland, supra.*

Order affirmed.

PIERCE and RULAND, JJ., concur.