IN RE KENNETH DEAN LIVINGSTON, Chapter 7, Debtor.
DANIEL CHIQUITO, Plaintiff-Appellee,
v.
KENNETH DEAN LIVINGSTON, Defendant-Appellant.
Bap No. CO-08-047, Bankr. No. 07-14280, Adv. No. 07-01469.
United States Bankruptcy Court, Appellate Panel of the Tenth Circuit.
October 21, 2008.
Before BOHANON, NUGENT, and RASURE, Bankruptcy Judges.[1]

OPINION[*]
BOHANON, Bankruptcy Judge.
Appellant Kenneth Dean Livingston ("Debtor") appeals the bankruptcy court's summary judgment order that the debt he owes to Daniel Chiquito ("Chiquito") is a nondischargeable domestic support order pursuant to 11 U.S.C. § 523(a)(5).[2] For the following reasons, we REVERSE.

I. Jurisdiction
This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[3] The bankruptcy court's judgment disposed of the adversary proceeding on the merits and is a final order subject to appeal under 28 U.S.C. § 158(a)(1). The Appellant timely filed his notice of appeal.[4] Neither party elected to have this appeal heard by the United States District Court for the District of Colorado, thus consenting to review by this Court.

II. Standard of Review
A bankruptcy court's grant of summary judgment is reviewedde novo, and this Court is required to apply the same legal standard as was used by the bankruptcy court to determine whether either party is entitled to judgment as a matter of law.[5]De novo review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[6] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7]

III. The Facts and the Bankruptcy Court's Holding
Chiquito and Viola Archuleta ("Viola") married on June 23, 1988. Approximately five months later, on November 11, 1988, Viola gave birth to a child, "J." The couple divorced in 1993 pursuant to an agreed order entered by the domestic relations court which determined that Chiquito was J.'s father and that Chiquito was obligated to pay child support to Viola. In 1999, after numerous years of paying child support, Chiquito became suspicious that the child was not biologically his. Chiquito sought to modify the agreed order in the dissolution proceeding, requesting that the court determine paternity, order retroactive reimbursement for the support he had previously provided, and adjust his child support obligation. The domestic relations court declined do so, finding the relief requested, revisiting the issue of J.'s paternity, was barred by the statute of limitations pursuant to Colorado Revised Statute § 19-4-107(1)(b)(2008).[8] Chiquito appealed to the Colorado Court of Appeals, which affirmed the state court judge's decision and further opined that the dissolution proceeding was not the proper forum to request relief from Viola or the alleged biological father for any misrepresentation or other tort either may have committed against Chiquito with respect to J.'s parentage.
Chiquito then filed suit in Adams County, Colorado District Court based on several tort theories against Viola and "John Doe," the biological father.[9] Chiquito subsequently amended his Complaint, naming Debtor the biological father.[10] In the Amended Complaint, Chiquito alleged that Debtor is the true biological father of the child.[11] During the course of this case, Chiquito alleged that this action was to establish paternity. The Adams County Court issued an order clarifying "[that the issue of paternity] has previously been decided and affirmed by the Court of Appeals #00CA0160 (2001). The within action is one of fraud, false representation, outrageous conduct, unjust enrichment and indemnity."[12]
Debtor did not answer the Complaint or the Amended Complaint and did not comply with the Adams County Court's order to submit to genetic testing. The Adams County Court entered default judgment against Debtor and set a hearing for determination of damages and final judgment.[13] At the damages hearing, the Adams County Court stated "this civil action sounding in fraud and deception is simple, particularly simple, because in this case the defendant apparently, by his act of omission, is confessing the facts because he's failed to answer in denial[making] the resolution of this . . . case very easy."[14] It found that "[Debtor] was at the conception, apparently, but has not been around [, which] doesn't make him the father, that makes him the biological donor and makes him responsible for this case."[15] After presenting the state's registry of child support payments he made for the child, payments of health insurance for the child, and related attorney fees, Chiquito asked the court to modify the existing support order to avoid additional accrual of damages. The Adams County Court stated "[it did not] have jurisdiction over that" but agreed to leave the judgment open for future damages "due to the fact that this Court has no jurisdiction to go back and change the DR [domestic relations] case because, frankly, it's been upheld by the Court of Appeals, and I can't overrule the Court of Appeals."[16] The Adams County Court entered judgment in the amount of $33,861.05 (the "Default Judgment").[17]
Debtor filed for Chapter 7 relief on April 28, 2007. Chiquito then filed an adversary proceeding to have the Default Judgment excepted from Debtor's discharge under § 523(a)(2) for fraud and § 523(a)(5) as a domestic support obligation. He later amended his complaint, dropping the fraud allegation and relying only upon § 523(a)(5). On January 9, 2008, Chiquito filed a motion for summary judgment.[18] The parties then filed a joint statement of stipulated facts and law on February 28, 2008 (the "Joint Stipulation").[19]
After hearing oral argument and considering the Joint Stipulation, the bankruptcy court granted summary judgment to Chiquito, excepting the Default Judgment from discharge under § 523(a)(5) because, foundationally, the obligation arose as child support. Based on the parties' stipulations, the bankruptcy court concluded that: (1) Chiquito agreed to pay and actually paid child support to Viola for support of the child; (2) Chiquito's payments to Viola were "in the nature of support;" and (3) Chiquito was and is the legal parent of the child at all relevant times. Relying on Archer v. Warner[20] and Brown v. Felsen,[21]the bankruptcy court concluded that it may inquire beyond the record of the state court Default Judgment to determine if the underlying obligation is a nondischargeable debt. Thereafter, the bankruptcy court concluded that the underlying foundation and composition of the Default Judgment consisted of child support because the damages assessed were for reimbursement of an obligation that was in the nature of support of a child of the debtor or such child's parent pursuant to §101(14A). The bankruptcy court further concluded that consistent with Cohen v. de la Cruz, In re Lowther, and In re Jones, attorney's fees attendant to the Default Judgment are in the "nature of support" and are not dischargeable.[22] This appeal followed.

IV. Discussion
The issue on appeal is whether the Default Judgment meets the definition of a "domestic support obligation" under § 101(14A). The bankruptcy court concluded that it did. We disagree.
Section 101(14A) defines "domestic support obligation" as:
a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is
(A) owed to or recoverable by
(i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
(ii) a governmental unit;
(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of
(i) a separation agreement, divorce decree, or property settlement agreement;
(ii) an order of a court of record; or
(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.[23]
The statutory definition of "domestic support obligation" has four separate requirements: (1) the debt must be owed to or recoverable by a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; (2) the debt must be in the nature of support of the child of the debtor or such child's parent, even if not expressly so designated; (3) the debt must be established before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of an order of a court of record or a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and (4) the debt must not be assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.[24] All four requirements must be met for an obligation to be considered a domestic support obligation ("DSO").
There is no question that the third and fourth criteria are satisfied as the Default Judgment was ordered by a court of record (i.e., the Adams County Court) and the debt has not been assigned to a nongovernmental entity. We reject Debtor's argument that the Default Judgment must be issued by a lawful domestic relations court in order to meet the definition of a DSO. Contrary to Debtor's assertion, § 101(14A) does not require the DSO to be an order of a domestic relations court, a paternity or juvenile court, but just "a court of record." The Adams County Court is a court of record.
The first and second criteria, however, have not been satisfied. The first and second criteria requires, inter alia, that the debt be for the benefit of a child of the debtor.[25] Implicit in the bankruptcy court's ruling is a determination that J. is a child of the Debtor.

A. The issue of J.'s paternity has been conclusively established in Chiquito.
The Colorado domestic relations court and the Colorado Court of Appeals have already held that Chiquito is precluded from attempting to disestablish his paternity of J. pursuant to Colorado Revised Statute § 19-4-107(1)(b). This section of the Uniform Parentage Act states, in relevant part:
(1) A child, his natural mother, or a man presumed to be his father under section 19-4-105(1)(a) . . . may bring an action:
(b) [f]or the purpose of declaring the nonexistence of the father and child relationship presumed under section 19-4-105(1)(a) . . . only if the action is brought within a reasonable time after obtaining knowledge of relevant facts but in no event later than five years after the child's birth. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party.
Colo. Rev. Stat. Ann. § 19-4-107(1)(b) (2008). Section 19-4-105(1)(a) of Colorado's Uniform Parentage Act provides that "[a] man is presumed to be the natural father of a child . . . if [h]e and the child's natural mother are or have been married to each other and the child is born during the marriage[.]" Colo. Rev. Stat. Ann. § 19-4-105(1)(a) (2008). Finally, section 19-4-116(1) of the Uniform Parentage Act provides that "[t]he judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes." Colo. Rev. Stat. Ann. § 19-4-116(1) (2008) (emphasis added).
Because Chiquito was married to Viola when J. was born, he is the presumptive father. Since Chiquito did not attempt to dispute his paternity until more than five years after J.'s birth, the domestic relations court and the appellate court both determined that Chiquito was no longer entitled to bring an action to establish paternity in another man.[26] Moreover, the Adams County Court also declined to adjudicate paternity in Debtor because Chiquito's paternity had already been conclusively established in the dissolution proceeding.[27]Pursuant to Colorado Revised Statute 19-4-116(1), the orders of the Colorado courts determining Chiquito's paternity and refusing to entertain any attempt by Chiquito to establish paternity in the Debtor are "determinative for all purposes." Thus, as a matter of law, the bankruptcy court was precluded from concluding that J. was a "child of the debtor."

B. The Parties' Stipulations
In addition, the evidence presented in the record on summary judgment, viewed in the light most favorable to the non-moving party, does not support a determination that J. was a child of the Debtor. The bankruptcy court made several conclusions based on the parties' stipulations (i.e., Chiquito's payments to Viola were in the nature of support; Chiquito is the child's parent).[28] The parties' stipulations, however, do not establish that J. is Debtor's child. The only stipulations concerning the paternity of the child are these. The parties agree that, while Chiquito agreed to pay child support when his marriage to Viola was dissolved, genetic testing discloses that Chiquito is not J.'s biological father. The parties also agree that Viola told Chiquito that "she'd been impregnated by Defendant [Debtor]" after Chiquito filed an action in state court to modify his support obligation.[29] Finally, Debtor was ordered by the state court to undergo genetic testing, but did not do so. Taken together, these stipulations do not establish that J. is Debtor's child. Viola informing Chiquito that Debtor impregnated her does not establish that the child is the Debtor's, it merely proves that Viola told Chiquito something, rather than prove the truth of the matter asserted.

C. Preclusive Effect of the Default Judgment
The only other evidence in the record that could possibly support a finding that J. is Debtor's child are the comments made by the state court in a hearing on the Default Judgment action that Debtor was the biological donor, was "apparently" present at conception, and confessed the claim that he defrauded Chiquito regarding paternity by failing to answer the Amended Complaint. Reliance upon this evidence, however, requires giving collateral estoppel effect to the Default Judgment. Under Colorado law, relitigation of an issue is only barred where: (1) the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding;(2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding;(3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.[30] Chiquito, as the party seeking to establish an issue by collateral estoppel, has the burden of proving that Colorado law would give preclusive effect to the Default Judgment.[31]
The issue of whether Debtor was the child's father was never actually litigated or determined in the Default Judgment action. The state court never made an express finding of paternity in Debtor. The state court's comments regarding Debtor's paternity of J. were made "as dicta" and made to encourage Chiquito, the only father the child has ever known, to "do the right thing as it relates to being a father."[32] Moreover, the state court specifically declined to determine Debtor's paternity of the child and admitted it lacked jurisdiction to do so.[33] Indeed, pursuant to Colorado Revised Statute § 13-25-126(1)(a),the state court could have resolved the question of parentage against Debtor since he did not undergo genetic testing as ordered by the court, but the state court declined to do so and made no finding that Debtor was the father of the child.[34] Thus, the Default Judgment does not meet the first element of the collateral estoppel test.
Moreover, it is questionable whether the Default Judgment can meet the fourth element of the collateral estoppel test, that Debtor had a full and fair opportunity to litigate the paternity issue. Here, Colorado law requires us to consider: (1) whether the remedies and procedures in the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted; (2) whether the party in the first proceeding had sufficient incentive to vigorously assert or defend his position; and (3) the extent to which the issues are identical.[35] The issues in the two proceedings are not identical. Chiquito filed an action in state court for fraud and deception and the state court entered default judgment on that complaint. Chiquito filed a bankruptcy court adversary proceeding seeking to except Debtor's debt to him from discharge on two bases, fraud and that the obligation was in the nature of support. He abandoned the fraud allegation in bankruptcy court, leaving only the § 523(a)(5) issue in play. The dischargeability of a domestic support obligation is not "identical" to an action for fraud and deception. While Debtor's biological paternity was in question, his and Viola's acts or omissions, and Chiquito's reliance on them, were the issues at the center of the state court case. In sum, the Court concludes the Default Judgment does not have preclusive effect on the issue of Debtor's paternity of J.[36]

D. The Foundation of the Obligation
The bankruptcy court focused its § 523(a)(5) analysis on the foundation of the obligation. Even if we assumed that the Default Judgment was in the nature of support, Chiquito is not entitled to judgment as a matter of law under § 523(a)(5). The bankruptcy court erred in assuming the Default Judgment established that the debt was owed to a parent of a "child of the debtor." Because the Default Judgment is not a debt for the support of a "child of the debtor," it is not a DSO as defined by the Bankruptcy Code. In light of the statutory language, this Court cannot except from discharge a debt to support a child not proven to be fathered by the Debtor, and whose paternity may not be established in the Debtor as a matter of law.

V. Conclusion
For these reasons, we REVERSE the bankruptcy court's order granting summary judgment to Chiquito. The Default Judgment is not a "domestic support obligation." The debt owed to Chiquito based on the Default Judgment is dischargeable.
NOTES
[1] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. Fed. R. Bankr. P. 8012. The case is therefore ordered submitted without oral argument.
[*] This unpublished opinion is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. BAP L.R. 8018-6(a).
[2] Unless otherwise noted, all future statutory references are to title 11 of the United States Code.
[3] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002.
[4] Fed. R. Bankr. P. 8002(a).
[5] Tillman ex rel. Estate of Tillman v. Camelot Music, Inc., 408 F.3d 1300, 1303 (10th Cir. 2005).
[6] Salve Regina Coll. v. Russell, 499 U.S. 225, 238 (1991).
[7] Fed. R. Civ. P. 56(c). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).
[8] This statute provides that a man statutorily presumed to be a child's father (for instance, a man who was married to the mother of the child when the child was born) may not bring an action to dispute the father/child relationship after the child is five years old. See Colo. Rev. Stat. Ann. § 19-4-107(1)(b)(2008).
[9] Complaint in Appellant's Appendix ("APPX.") at 149-153.
[10] 1st Amended Complaint, in APPX. at 154-158.
[11] Id. at ¶ 30, in APPX. at 157.
[12] Order, in APPX. at 159.
[13] Order for Default, in APPX. at 161.
[14] Transcript of January 3, 2003, Hearing ("Tr.")at 9, ll. 7-13, in APPX. at 171.
[15] Id. at 10, ll. 7-10, in APPX. at 172.
[16] Id. at 6, l. 15 and 11, ll. 11-15, in APPX. at 168 and 173.
[17] Transcript of Judgment, in APPX. at 162.
[18] Plaintiff's Motion for Summary Judgment, in APPX. 59-67.
[19] Joint Pretrial Statement, in APPX. 136-142.
[20] 538 U.S. 314 (2003).
[21] 442 U.S. 127 (1979).
[22] Cohen v. de la Cruz, 523 U.S. 213 (1998); Lowther v. Lowther (In re Lowther), 321 F.3d 946 (10th Cir. 2002); Jones v. Jones (In re Jones), 9 F.3d 878 (10th Cir. 1993).
[23] 11 U.S.C. § 101(14A).
[24] Wis. Dept. of Workforce Dev. v. Ratliff, 390 B.R. 607, 613-14 (E.D. Wis. 2008).
[25] See White v. Ouachita County Office of Child Support Enforcement Unit, 253 B.R. 253, 256 (Bankr. W.D. Ark. 2000) (Debt is nondischargeable under § 523(a)(5) only if it is for support of "a child of the debtor.") and Gray v. Engesser (In re Gray), 41 B.R. 759, 763 (Bankr. S.D. Ohio 1984) (The language of the exception in § 523(a)(5) requires, inter alia, that for a debt to be not dischargeable, it must be to and for the benefit of a child of the debtor.). Although BAPCPA implemented the new term DSO, that term was derived from the definition of a nondischargeable debt for alimony, maintenance and support contained in former § 523(a)(5), and the case law construing that section is a relevant and persuasive aid in construing the term DSO in § 101(14A). Nelson, Keys & Keys, P.C. v. Hudson (In re Hudson), 01-81745, 2007 WL 4219421 (Bankr. C.D. Ill. Nov. 27, 2007).
[26] See also P.D. ex rel. M.R.D. v. F.M., 805 P.2d 1200, 1202 (Colo. Ct. App. 1991) (presumed father is required to disestablish paternity before he may establish another father-child relationship; if the child is over five years of age, the presumed father is time barred from disestablishing his relationship, and therefore his action to establish another man as the child's father was properly dismissed).
[27] See also Kan. ex rel. Daniels v. Daniels, 817 P.2d 632, 634-35 (Colo. Ct. App. 1991) (determination of paternity in dissolution proceeding is conclusive and bars relitigation of the issue in a later proceeding).
[28] Order Granting Plaintiff's Motion for Summary Judgment at 11, in APPX. at 131.
[29] Joint Stipulation at 3, ¶ 10, in APPX. at 138.
[30] Bebo Constr. Co. v. Mattox & O'Brien, P.C., 990 P.2d 78, 84-85 (Colo. 1999).
[31] Nichols v. Bd. of County Comm'rs, 506 F.3d 962, 967-68 (10th Cir. 2007).
[32] Tr. at 9, 10, in APPX. at 171, l. 14, 172, ll. 16-17.
[33] Id. at 6, 11, in APPX. at 168, 173.
[34] In any event, genetic testing may not be ordered or admitted into evidence after paternity has been already adjudicated in a final order, as it was here in the agreed order, the domestic relations court's order denying modification of the agreed order, and its affirmance on appeal. See People ex rel. J.A.U. v. R.L.C., 47 P.3d 327, 333-34 (Colo. 2002)(en banc) (adjudicated father was not entitled to an order for genetic testing to determine paternity after a legal judgment determining paternity had already been entered).
[35] See Elletson v. Riggle (In re Riggle), 389 B.R. 167, 178 (D. Colo. 2007).
[36] Nichols, 506 F.3d at 968 (The Court of Appeals for the Tenth Circuit predicted that the Colorado Supreme Court would adhere to the Restatement (Second) of Judgments § 27 cmt. e (1982), which provides that issues are not "actually litigated" for the purpose of issue preclusion by judgments entered by default unless the parties entered into an agreement manifesting such an intention.).